

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

UNITED STATES OF AMERICA )
VS. )                Criminal Action
)                No. 5:10-CR-0319-11
BRIAN MUSOMBA MAWEU )
_____ )


OFFICIAL TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA HEARING
BEFORE THE HONORABLE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE
APRIL 9, 2015; 11:00 A.M.
SHREVEPORT, LOUISIANA

**FOR THE GOVERNMENT:**
Mr. John Luke Walker
Mr. Frederick Michael O'Mara
U.S. Attorney's Office
800 Lafayette Street, Suite 2200
Lafayette, Louisiana  70501

**FOR THE DEFENDANT:**
Mr. John F. Stroud, III
Law Office of John F. Stroud, III
515 Main Street
Texarkana, TX  75501




Produced by mechanical stenography, transcript produced by
computer.

MARIE M. RUNYON, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
300 FANNIN STREET, ROOM 4212
SHREVEPORT, LOUISIANA  71101
(318) 222-9203

1          (Court called to order with the defendant

2      present at 11:13 a.m.)

3              THE COURT:  Good morning.  Please be seated.  Court

4  will come to order.

5      Mr. Walker?

6              MR. WALKER:  Yes, Your Honor?

7              THE COURT:  Why are we here?

8              MR. WALKER:  Your Honor, we're here for a guilty plea

9  in United States vs. Brian Musomba -- and I always pronounce

10  his last name incorrectly.

11              MR. STROUD:  Maweu.

12              MR. WALKER:  -- Maweu, Criminal No. 10-CR-0319-11.  I

13  have a signed, completed plea packet.  And his attorney, John

14  F. Stroud III, is here with Mr. Maweu.

15              THE COURT:  All right.  Mr. Stroud, you are appointed

16  counsel from Texarkana.  We appreciate it.  We kind of ran out

17  of local people and have relied heavily on Texas, in the

18  Eastern District, to help us through this particular

19  indictment.

20      In this instance, how does your client intend to plead

21  today?

22              MR. STROUD:  Your Honor, Mr. Maweu is present before

23  the Court, and it is our intent to change our plea to guilty

24  this morning.

25              THE COURT:  All right.  Would you come up with your

1    client to this center podium, please.

2         Mr. Maweu, good morning.

3              THE DEFENDANT:  Good morning, sir.

4              THE COURT:  And as I understand it, you are a citizen

5    of the country of Kenya?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And I have also been led to believe that

8    you speak and understand English fluently?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  Are you comfortable in this

11   proceeding with English as your language?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  All right.  At this time, our procedure

14   requires that you be sworn in as we would any other witness.

15        (Defendant sworn.)

16             THE COURT:  Sir, now that you've been sworn to tell

17   the truth in a United States district court, I must caution you

18   about a couple of things.

19         First, your answers to my questions must be truthful.  If

20   they're not, you subject yourself to having additional charges

21   filed against you, possibly even for perjury.  And if you are

22   so charged, those carry penalties totally separate and apart

23   from what we are dealing with today.  Do you understand that,

24   sir?

25             THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  All right.  You are charged in the
2    indictment with multiple counts, but you are pleading only to
3    Count 1 based on the paperwork that I see.  Is that your
4    understanding as well?
5    THE DEFENDANT:  Yes, Your Honor.
6    THE COURT:  And have you read a copy of the
7    indictment filed against you, sir?
8    THE DEFENDANT:  Yes, Your Honor.
9    THE COURT:  And have you fully discussed with your
10   lawyer the charges in that indictment?
11   THE DEFENDANT:  Yes, Your Honor.
12   THE COURT:  Including the charge to which you intend
13   to plead guilty today?
14   THE DEFENDANT:  Yes, Your Honor.
15   THE COURT:  In this particular instance, Count 1 is
16   quite a lengthy count.  Can you tell me basically what you are
17   charged with having done criminally wrong?
18   THE DEFENDANT:  Posting child pornography in
19   Dreamboard, that is, three files, three separate occasions --
20   no.  With three -- together, three different people and
21   involving more than three victims.  Something like that, yeah.
22   THE COURT:  All right.  The technical term is
23   "engaging in a child exploitation enterprise."  Has that
24   been --
25   THE DEFENDANT:  Yes.

```
 1              THE COURT:  -- discussed with you?
 2              THE DEFENDANT:  That's what's written on it, yes.
 3              THE COURT:  All right.  And you have a basic
 4   understanding of that charge to which you are pleading guilty?
 5              THE DEFENDANT:  It's written down there, Your Honor,
 6   yes.
 7              THE COURT:  And you've read it and understand it?
 8   That is, you can read English; am I correct?
 9              THE DEFENDANT:  I can read English, Your Honor.
10   English is the official language in Kenya.
11              THE COURT:  All right.  Very well.
12              THE DEFENDANT:  Swahili is the social language.
13   English is the official language.  So I understand it, yes.
14              THE COURT:  Mr. Stroud, let me ask you.  You've been
15   over this a lot, for lack of a better term, with your client;
16   am I correct in that?
17              MR. STROUD:  That is correct, Your Honor.
18              THE COURT:  And based on your visiting with him and
19   counseling him and going through these charges and plea
20   negotiations, do you believe that he understands the nature of
21   the charge to which he intends to plead guilty?
22              MR. STROUD:  I do, Your Honor.
23              THE COURT:  In this particular instance, is there --
24   would you like me to read Count 1?
25              MR. STROUD:  Your Honor, we can waive a formal
```

1    reading of Count 1.  I just would note for the Court that Brian

2    and I have reviewed everything.  He's a very intelligent,

3    reflective individual, and I have no reason to doubt that he

4    completely understands the charges against him.

5              THE COURT:  All right.  Do you have any questions you

6    need to ask me of those charges?

7              THE DEFENDANT:  Is this an opportunity to say

8    something before --

9              THE COURT:  Not yet.  We're going to break down

10   these, but if there's something you simply don't understand --

11             THE DEFENDANT:  No.  I understand it.

12             THE COURT:  -- right now --

13             THE DEFENDANT:  I understand it.

14             THE COURT:  All right.  How do you wish to plead,

15   then, to Count 1 today, guilty or not guilty?

16             THE DEFENDANT:  Guilty.

17             THE COURT:  In pleading guilty, you have a number of

18   rights which we're going to go over one by one.  The first

19   right we need to talk about is the right to remain silent.  Up

20   till now, you have had an opportunity to discuss your case in

21   detail with your lawyer without having to talk to anyone else.

22   Today, however, you're going to have to give up the right to

23   remain silent for you to talk to me, answer questions that I

24   ask you, and on a couple of different occasions admit your

25   guilt in fact to the charges contained in Count 1.  Do you

1    understand that?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Are you willing to give up the right to

4    remain silent for me to proceed further?

5            MR. STROUD:  You give up the right to remain silent

6    so we can continue with your plea of guilty.  You agree to --

7            THE DEFENDANT:  Yeah.  Okay.

8            MR. STROUD:  -- answer the judge's questions.

9            THE DEFENDANT:  I'm just -- I'm just wondering why I

10   should --

11           MR. STROUD:  Yeah.  Sure.

12           THE DEFENDANT:  I -- I -- yes, sir.

13           MR. STROUD:  You understand we will have to answer

14   questions from the judge containing the allegations to which

15   we're pleading guilty?  Specifically --

16           THE DEFENDANT:  Yes.  I believe that's why I've come

17   here.

18           MR. STROUD:  Right.  And specifically, the factual

19   basis for the guilty plea.

20           THE DEFENDANT:  Yes.  Yes.  I do understand that,

21   Your Honor.

22           THE COURT:  All right.  At this particular point, do

23   we have just the factual basis today, Mr. Walker?

24           MR. WALKER:  We do.  We have a written factual basis

25   that is a part of the plea packet that's been signed in all

1    appropriate places by all the parties.  I would introduce the

2    entire document, and the last part of that document is the

3    factual basis.

4              THE COURT:  All right.  Thank you.

5              MR. STROUD:  And, Your Honor, for the record, we have

6    a copy of the signed factual basis in front of us.

7              THE COURT:  All right.  I'm going to hand the

8    original to you once the clerk identifies it and removes it

9    from the packet that was presented in accordance with Rule 11.

10        Your lawyer has placed in front of you a 5-page factual

11   basis.  Let me explain what that means.

12        We have two ways of doing this.  The first is to put an

13   agent from Homeland Security, the Department of Homeland

14   Security, on the stand, swear that witness in and go through

15   all of the details factually that prove that you are guilty of

16   the crimes that you're pleading guilty to.  Okay?

17        The other way is this written factual basis for entry to

18   a plea of guilty.  Okay?  It contains a recitation of the facts

19   on which I can find you guilty, that is, that you actually did

20   these things in contravention of law, which indicate to me

21   there's a reason for you to plead guilty.

22        Here's what sometimes happens:  Sometimes a defendant

23   comes into this court and simply wants to enter a plea because

24   it's simpler, they want to save time and get it over with.  I

25   can't accept a guilty plea like that.

1   What I have to be sure of is that there is a sufficient

2   factual foundation for you to enter your guilty plea to prove

3   you guilty of the crimes that are charged.  That's what this

4   document does.

5   Have you read this document called a Factual Basis for

6   Plea of Guilty?

7   THE DEFENDANT:  Yes, Your Honor.

8   THE COURT:  Have you been over it with your lawyer?

9   THE DEFENDANT:  Yes.  Yes, we've been over it.

10   THE COURT:  In this particular matter, on page 5,

11   Mr. Maweu, there at the top, "Brian Musomba Maweu, a.k.a." --

12   meaning *also known as* -- "Catfish, defendant," is that your

13   signature there, sir?

14   THE DEFENDANT:  That's my signature.

15   THE COURT:  All right.  Mr. Stroud, your name appears

16   just below his; am I correct?

17   MR. STROUD:  That's correct, Your Honor.

18   THE COURT:  Did you go over this document with him?

19   MR. STROUD:  I did, Your Honor.  On March the 20th of

20   this year, I met with my client at the Bossier detention

21   center.  We reviewed this document as well as the other

22   documents in the plea packet that's been tendered into evidence

23   today, and we have reviewed these documents.

24   THE COURT:  All right.  Do you have any disagreement

25   with the way that it's worded or the facts that are recited in

1    that document, sir?

2             THE DEFENDANT:  No.

3             THE COURT:  All right.  The Court will accept the

4    written factual basis in lieu of live testimony from an agent.

5         There are a number of questions that I have to ask you.

6    By now, you have figured out that pleading guilty in federal

7    court is not an easy matter.  It takes roughly 30 to 40 minutes

8    in order to accomplish this task, because I have to be sure

9    that you are entering a valid guilty plea.

10        Let me ask you a couple of questions to start out, first.

11        How old are you, sir?

12             THE DEFENDANT:  Fifty-one.

13             THE COURT:  And the highest grade or level of

14   education that you finished?

15             THE DEFENDANT:  Higher National Diploma.  It's almost

16   like a degree.

17             THE COURT:  All right.  Is that at the college level

18   or high school?

19             THE DEFENDANT:  Yes.  College level, yeah.

20             THE COURT:  Are you under the care of a doctor at

21   this time?

22             THE DEFENDANT:  No.  No, sir.

23             THE COURT:  In the past 24 hours -- and I know you're

24   in custody -- have you taken any medicine or pills?

25             THE DEFENDANT:  Yes.  They're giving me some -- two

1  pills.

2         THE COURT:  Do you know what they are?

3         THE DEFENDANT:  Yeah.  They say it's for the liver.

4  They say my liver is hot, Your Honor.

5         THE COURT:  Is there a problem with your liver that

6  they've identified to you?

7         THE DEFENDANT:  As far as I know, I'm fit, I'm

8  healthy.  But they did that test and they found that out; so,

9  that.

10         THE COURT:  You're on that medication?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Let me ask you about how you feel while

13  you take that medication.  Does it affect your ability to think

14  or process information?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Does it make you sleepy or drowsy?

17         THE DEFENDANT:  No.  No, sir.

18         THE COURT:  As you stand in front of me today, are

19  you clearheaded?

20         THE DEFENDANT:  Yes.  Yes, I am.

21         THE COURT:  And you are able to answer the questions

22  that I have asked you so far?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  All right.  Do you have any mental or

25  physical problems that might limit your ability to understand

1    this proceeding today?

2                 THE DEFENDANT:  No, Your Honor.

3                 THE COURT:  Do you, in fact, have an understanding of

4    what is happening in this courtroom today?

5                 THE DEFENDANT:  Yes, Your Honor.

6                 THE COURT:  Do you understand what your role in this

7    proceeding is?

8                 THE DEFENDANT:  Yes, Your Honor.

9                 THE COURT:  Mr. Stroud, do you have any doubt as to

10   your client's competence to plead guilty at this time?

11               MR. STROUD:  No, Your Honor.

12               THE COURT:  From the prosecution, Mr. Walker, any

13   doubt?

14               MR. WALKER:  I have no doubt, and I've spoken -- we

15   had a conversation that was extensive, for hours, and I have no

16   doubt as to his competency.

17               THE COURT:  The Court finds the defendant competent

18   to plead guilty in this matter today.

19         Since you got to the United States and had your, what we

20   call an initial appearance, a lawyer has been assigned, under

21   the law, to represent your interests.  That's Mr. Stroud

22   standing next to you.  Have you talked to any other lawyers?

23               THE DEFENDANT:  No, Your Honor.

24               THE COURT:  All right.  And you have met with him on

25   a number of occasions?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  And you fully discussed the charges that

3  you intend to plead guilty to?

4      THE DEFENDANT:  Yes, Your Honor.

5      THE COURT:  Are you satisfied with his representation

6  of your interests?

7      THE DEFENDANT:  Yes, Your Honor.

8      THE COURT:  At this time, Mr. Stroud, have you

9  communicated all plea offers to your client?

10      MR. STROUD:  I have, Your Honor.  I'd note for the

11  record that I reviewed my file.  I've made nine different trips

12  to visit with Brian in the Bossier detention center, and we

13  have thoroughly reviewed all aspects of this case.

14      THE COURT:  In this instance, Mr. Walker, how many

15  plea offers did you make?

16      MR. WALKER:  There's been a single plea offer, Your

17  Honor, which he accepted.

18      THE COURT:  All right.  And that's the one that we're

19  dealing with today?

20      MR. WALKER:  That is correct.

21      THE COURT:  All right.  Let me tell you a little bit

22  about the law of the United States.  If you decided to maintain

23  your not guilty plea, you'd be entitled to have the Government

24  to present its case against you to a citizen panel, called a

25  jury, consisting of 12 persons.  They would hear all the

1   evidence.  They would hear all the arguments of counsel at the

2   close of the case.  They would hear my jury instructions on the

3   application of the law and what law they are to consider, and

4   then they would retire to determine whether you were guilty or

5   not guilty of the crimes charged.

6        In the United States system, in federal court, it takes

7   all 12 jurors to agree unanimously that you were guilty of

8   these crimes before you could be convicted of them.  Do you

9   understand that?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  In this particular instance, you have

12   absolutely nothing to prove should you decide to proceed to

13   trial.  You do not have to prove you are innocent.  The entire

14   burden of proving the Government's case against you rests with

15   the Government and no one else.

16        It is their requirement, under our law, to come forward

17   with competent evidence to prove you guilty beyond a reasonable

18   doubt of each charge that they have charged you with.  That

19   means if one juror disagrees during deliberations, you could

20   not be convicted.  Do you understand that?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  In the course of the trial, the

23   Government has to prove certain essential elements of Count 1.

24   Have you seen an essential elements worksheet?

25            THE DEFENDANT:  Yes, Your Honor.  I was given an

1    affidavit in support of extradition when I came here.  There

2    were five of them for Count 1.  And my lawyer has also given me

3    another.  Yeah.  Yeah.

4         THE COURT:  Let's go over what's called the Elements

5    of the offense.  Do you have that sheet in front of you, sir?

6         THE DEFENDANT:  Yes, sir.

7         MR. STROUD:  We do, Your Honor.

8         THE COURT:  All right.  You'll see the title

9    "Elements of the Offense, 18 U.S. Code, Section 2252A(g),

10   Engaging in a Child Exploitation Enterprise."

11       There are several different federal crimes that are

12   interconnected with the ultimate charge of engaging in a child

13   exploitation enterprise, so this is going to take a couple

14   minutes to go through and be sure -- I have to be sure that you

15   understand this.  Okay?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  So let's begin.

18       In order to find you guilty, each of the following must

19   be proved beyond a reasonable doubt:  First, that you, in

20   concert with three or more other persons, committed a series of

21   felony violations, constituting three or more separate

22   incidents; second, that the felony violations involved more

23   than one minor victim; third, that the felony violations were

24   in violation of Chapter 109A, Chapter 110, or Chapter 117 of

25   Title 18 of the United States Code.

1    Title 18, U.S. Code, Sections 2251 and 2252A are both

2    criminal statutes that are part of Chapter 110 of Title 18 of

3    the United States Code.  Thus, if one conspires to advertise

4    child pornography, in violation of Title 18, U.S. Code, Section

5    2251(d)(1) and (e), or if one conspires to distribute child

6    pornography, in violation of Title 18, United States Code,

7    Section 2252(a)(2)(A) and Section (b)(1), as are charged in

8    Counts 2 and 3 of the indictment, he's committed a felony

9    violation of Chapter 110 of Title 18 of the United States Code.

10    Now, in order to be found guilty of a conspiracy, each of

11    the following elements must be proved beyond a reasonable

12    doubt:  First, that you and at least one other person made an

13    agreement to commit the crime charged; second, that you knew

14    the unlawful purpose of the agreement and engaged in it

15    willfully, that is, with the intent to further the unlawful

16    purpose; and, third, that one of the co-conspirators during the

17    existence of the conspiracy knowingly committed at least one of

18    the overt acts described in the indictment in order to

19    accomplish some object or purpose of the conspiracy.

20    The next component has to do with advertising.  In order

21    to be found guilty of advertising child pornography, in

22    violation of Title 18, United States Code, Section 2251(d)(1),

23    each of the following elements must be proved beyond a

24    reasonable doubt:  First, that you made, printed or published,

25    or caused to be made, printed, advertised or published, a

1   notice or advertisement; second, that the purpose of the notice
2   or advertisement was to seek or offer to receive, exchange,
3   buy, produce, display, distribute or reproduce any visual
4   depiction; third, that the visual depiction involved the use of
5   a minor engaging in sexually explicit conduct and such visual
6   depiction was of such conduct; and, fourth, that the
7   advertisement was transported using any means of facility of
8   interstate or foreign commerce, including by computer.
9       The next component is distribution of child pornography.
10  In order to be found guilty of distribution of child
11  pornography, in violation of Title 18, U.S. Code, Section
12  2252A(a)(2)(A) and (b)(1), each of the following elements must
13  be proved beyond a reasonable doubt:  First, that you knowingly
14  distributed a visual depiction; second, that the production of
15  the visual depiction involved the use of a minor engaging in
16  sexually explicit conduct and such visual depiction was of such
17  conduct; and, third, that the visual depiction was transported
18  in interstate commerce or foreign commerce.
19      You are only pleading guilty to engaging in a child
20  exploitation enterprise.  I have instructed you as to the
21  elements of conspiracy, advertising child pornography, and
22  distribution of child pornography because these are the
23  offenses you are alleged to have engaged in as part of the
24  child exploitation enterprise.
25      *Child pornography* is defined as "any visual depiction of

1   sexually explicit conduct in which the production of the visual

2   depiction involves the use of a minor engaging in sexually

3   explicit conduct."

4        Now, that is what the law requires the Government to

5   prove should you decide to proceed to trial instead of pleading

6   guilty.  My question to you is this:  Are you, in fact, guilty

7   of the crimes charged as I have just read and explained them to

8   you?

9            THE DEFENDANT:  Your Honor, may I just make one

10  point?

11           THE COURT:  You also may confer with counsel, which

12  may be a better idea.  And you can step back from that

13  microphone if you wish to hold a private conference.

14       (Defendant confers with his counsel.)

15           MR. STROUD:  Your Honor, Mr. Musomba, his only

16  question is -- he doesn't deny that he was engaged in this

17  course of conduct, and we are admitting that today.  His only

18  issue that he's bringing up is that he didn't know that this

19  was particularly in violation of American law.  However, he

20  freely admits that --

21       You engaged in these particular acts, is that --

22           THE DEFENDANT:  Yes, sir.  I'm taking responsibility.

23  Although while in Kenya, I would expect to be subject to Kenyan

24  laws.  I wasn't expecting that I'm also subject to American

25  law.  That's one thing I'm bringing up.

1  MR. STROUD:  Right.  And just for the record, Brian,

2  we have discussed the aspect of foreign commerce, of this being

3  placed in foreign commerce and --

4  THE DEFENDANT:  Yes.  I understand.

5  MR. STROUD:  -- then through that --

6  THE DEFENDANT:  I understand that.

7  MR. STROUD:  -- made its way to Louisiana.

8  THE DEFENDANT:  I understand that.  Yes, sir.  I was

9  not -- now that I know this.

10  THE COURT:  And I'm sure you were wondering how you

11  got from Kenya to Shreveport, Louisiana, on the basis of --

12  whether this is a violation of law in Kenya or not, it is a

13  violation of law, based on what is contained in your factual

14  basis --

15  THE DEFENDANT:  Yes, Your Honor.

16  THE COURT:  -- in the United States.

17  THE DEFENDANT:  Yes, Your Honor.  That's what I've

18  seen, yes.  And -- yes.

19  MR. STROUD:  And, Your Honor, I think just for

20  Brian's behalf, he --

21  When engaged in these acts, you did not specifically know

22  you were violating the law of the United States?

23  THE DEFENDANT:  I did not know, Your Honor.

24  MR. STROUD:  However, he did specifically engage in

25  this conduct.

1     Is that correct?

2          THE DEFENDANT:  Yes, that is.  In fact, I was tried

3     in Kenya over charges that were related to this, and acquitted.

4          THE COURT:  All right.

5          THE DEFENDANT:  So as far as I knew, it was over.

6     But now that I see -- I'm accepting responsibility in spite of

7     it, yes.

8          THE COURT:  All right.  Mr. Walker?

9          MR. WALKER:  And there is no requirement in the law

10    that he knows specifically the law that he's violating, only

11    that he engages in the acts that are a violation of the law.

12          THE COURT:  Essentially, a statement that ignorance

13    of the law is not a defense?

14          MR. WALKER:  In the United States.  That's correct,

15    Your Honor.

16          THE COURT:  All right.  Very well.

17     Your lawyer, Mr. Stroud, would represent your interests

18    at trial.  He would have the opportunity to exercise three

19    constitutional rights that are connected with the trial by

20    jury.  First, he would have the right to subpoena witnesses,

21    which is called compulsory process, from virtually anywhere in

22    order to help make out a defense on your behalf.  The second

23    thing is the right of confrontation, that is, to see and hear

24    witness testimony from this witness stand right here.  The

25    third one, that's connected to the second one, is then the

1    right to question or cross-examine each witness that is

2    presented against you.  Do you understand you have those

3    constitutional rights connected to a trial by jury?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  In this instance, he could offer evidence

6    in your behalf.  He could visit with you about a decision on

7    whether you should testify at your own trial or not.  But

8    here's another constitutional right that we need to discuss

9    connected to that jury trial:  You have an absolute right not

10   to testify.  Do you understand that?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  You also have a right to testify if you

13   so choose.  Do you understand that?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Do you understand that no one could ever

16   force you to take the witness stand?  No one could compel you

17   to take the witness stand?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  All right.  In this instance, if I accept

20   your guilty plea, all of these rights connected with that right

21   to a trial by jury will be given up or waived by you.  You

22   understand that?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  And are you willing to give up those

25   rights to a jury trial and the rights connected with it for me

1  to continue?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  If I accept your guilty plea, do you

4  understand that if you're not a United States citizen, that you

5  may be removed from the United States, that is, deported back

6  to Kenya following your sentence?

7          THE DEFENDANT:  That's what I'm expecting, Your

8  Honor, and I'm hoping for that to happen.  Yes.

9          THE COURT:  And that in the event that you ever

10 applied for citizenship in the United States, that this guilty

11 plea will most likely result in a denial of your application?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And should you attempt to enter the

14 United States again, that this particular guilty plea to this

15 crime, which is a felony, that you most likely would be denied

16 admission to the United States in the future?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.  Now, has anyone forced you to

19 plead guilty?

20         THE DEFENDANT:  No, Your Honor.  I'm just accepting

21 responsibility.

22         THE COURT:  I wish that was all there was to it; it

23 would be a lot faster hearing, but we've got a few more things

24 to discuss before I can accept your guilty plea and your

25 responsibility.  Okay?

1          Has anyone tricked you into pleading guilty?

2          THE DEFENDANT:  Well, I tried looking at it from

3     various angles, but my lawyer has convinced me, really, that

4     this is how it is, that's how things are done in the US,

5     so . . ..

6          THE COURT:  In this instance, though, did anybody try

7     to trick you into pleading guilty?

8          THE DEFENDANT:  Nobody.

9          THE COURT:  All right.  Has anyone told you that if

10    you did not plead guilty, that there would be more charges

11    filed against you?

12         THE DEFENDANT:  No, Your Honor.

13         THE COURT:  Or some other kind of action taken

14    against you?

15         THE DEFENDANT:  No, Your Honor.

16         THE COURT:  Are you willing to plead guilty to

17    Count 1 because you are, in fact, guilty as charged in Count 1?

18         THE DEFENDANT:  Yes.  Now that I see the law, yes.

19         THE COURT:  And this is your decision to plead

20    guilty?

21         THE DEFENDANT:  This is my decision, Your Honor.

22         THE COURT:  And you sought the advice and consent of

23    your lawyer before reaching your decision to plead guilty?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And, Mr. Stroud, did you counsel with him

1    about his decision to plead guilty?

2            MR. STROUD:  I have, Your Honor.

3            THE COURT:  And do you concur with his decision to

4    plead?

5            MR. STROUD:  I do, Your Honor.

6            THE COURT:  Thank you.

7        You've signed another document in this particular matter

8    called a Plea Agreement, another written document.  I'm going

9    to have our clerk hand that to your lawyer.

10       A plea agreement is a kind of contract that sets forth

11   the terms and conditions by which you, as well as the

12   Government, avoid going to a trial by jury.

13       And I'm not going to go over this line by line, page by

14   page, but if you would turn to the back page first, page 7.

15   Mr. Maweu, is that your signature toward the top of the page

16   there?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Did your lawyer go over this with you

19   line by line before you signed it?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Did he explain what these terms and

22   conditions in this Plea Agreement meant?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Did you understand the Plea Agreement?

25           THE DEFENDANT:  Yes, sir.

1    THE COURT:  In this instance, Mr. Walker, I see your

2    signature down there at the bottom on behalf of the government.

3        But you've got to turn -- let's see.  My copy shows page

4    6, Mr. Stroud.  Is that your signature there approving it as to

5    form and content for --

6        MR. STROUD:  It is, Your Honor.

7        THE COURT:  For your client?

8        MR. STROUD:  Yes, Your Honor.

9        THE COURT:  All right.  Let's turn to page 2, and

10   we're going to talk about sentencing for just a moment.

11       About the middle of the page, the word "sentencing"

12   appears.  Below it, it says "Brian Musomba Maweu, also known as

13   'Catfish,' understands and agrees that:  One, the maximum

14   punishment on Count 1 is a statutory mandatory minimum sentence

15   of not less than 20 years nor more than life in prison, or a

16   fine of up to $250,000, or both."  You see that?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Do you understand that as a result of

19   your decision to plead guilty to Count 1, that you will be

20   spending a 20-year maximum term, at a minimum, in a federal

21   correctional facility?

22       THE DEFENDANT:  Yes.  I discussed that with my

23   lawyer.  I noticed there's a discrepancy between that and the

24   Sentencing Guidelines which put 15 years as the minimum.

25       THE COURT:  And we'll discuss that in just a moment.

1   Because when the guidelines, that is, the chart that we're

2   going to talk about, conflict with the statutory minimum, the

3   statutory minimum applies.  And that's U.S. law.  And I'll

4   explain that to you in detail later.

5          But do you understand you face a minimum 20-year

6   mandatory sentence in a federal correctional facility?

7                THE DEFENDANT:  Yes, Your Honor.

8                THE COURT:  And I don't know what your sentence is,

9   but it could range between 20 years up to a lifetime in prison.

10  Do you understand that?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  I'm not saying you're going to be

13  sentenced to life, but I have to tell you what that range is.

14  And you understand that range?

15               THE DEFENDANT:  Yes, Your Honor.  I was aware of it

16  since I came here, because I was given these documents by the

17  Kenyan authorities.  Yeah, they explained that to me.

18               THE COURT:  All right.  You are also required to pay

19  what's called a special assessment of $100 at the time of the

20  guilty plea by means of a cashier's check, bank official check

21  or money order payable to Clerk, the United States District

22  Court.  Do you see that requirement?

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  The next thing is that you are subject to

25  receiving a term of supervised release of not less than 5 years

1    and up to a lifetime in length in addition to any term of

2    imprisonment imposed by this Court.  Do you see that?

3               THE DEFENDANT:  I see it, Your Honor, but I don't

4    know how it's going to be implemented, because --

5               THE COURT:  I don't either, because you probably face

6    either deportation proceedings or return to Kenya under the

7    applicable set of laws of the United States.

8               MR. WALKER:  That is correct.  He will be removed --

9    he should be removed after he serves his term of imprisonment.

10   Typically -- and I'm not saying that this is what is going to

11   happen.  And this is not a part of the agreement, it's simply

12   an explanation of my understanding.  Typically, if a person

13   receives supervised release for a time, when they leave the

14   United States, if they were to at any time come back to the

15   United States, that supervised release would immediately be

16   reimposed and they'd be on supervised release while they're

17   here.

18              THE COURT:  That's exactly correct.

19        Now, what mechanism will be used in order for deportation

20   proceedings or your eventual return to Kenya, that's an

21   administrative deal that's in a separate branch of government

22   that I do not participate in.  It's not an Article III

23   function, it's an Article II function.

24        In this instance, what I want you to understand is, I'm

25   going to impose terms of supervised release on you that will

1   govern your behavior, but because we expect you to be deported

2   back to Kenya, all those terms and conditions of supervised

3   release will be suspended; however, should you ever reenter the

4   United States, they will take effect immediately upon your

5   entry into the United States.  Do you understand that?

6          THE DEFENDANT:  Yeah, I understand.

7          THE COURT:  All right.  That term of supervised

8   release is between 5 years and up to a lifetime in length.  Do

9   you understand that, sir?

10          THE DEFENDANT:  Yes.  Yes, Your Honor.

11          THE COURT:  All right.  You have some requirements if

12   you ever enter the United States again to register as a sex

13   offender under what we call SORNA -- and that's toward the

14   bottom there on page 4 -- under Title 18, U.S. Code, Section

15   2250.  That's the Sex Offender Registration and Notification

16   Act.  See it in all caps down there?

17          THE DEFENDANT:  Yes, Your Honor, I see.

18          THE COURT:  I have no idea what Kenya may require

19   after your conviction here.  Kenya may not require anything of

20   you; I don't know.  But I have to tell you that should you

21   return to the United States, you would be subject to

22   registration under SORNA, and you're failure to do so can bring

23   you back in to court wherever it is you were residing or

24   studying or working, be brought back in to federal court on

25   charges for failure to register.  Is that clear?

1      THE DEFENDANT:  Your Honor, you can be assured I will

2  not be wanting to come back here.  I rather like it back home.

3  I'm just here because of these charges.

4      THE COURT:  I understand.

5      THE DEFENDANT:  Yes.

6      THE COURT:  Now, there's also, on page 5, a

7  cooperation agreement.

8      Mr. Walker, do we need to go over this in general terms,

9  or is there an adequate meeting of the minds with respect to

10  cooperation?

11      MR. WALKER:  We have had extensive discussions about

12  cooperation, and the Plea Agreement exactly lays out the

13  cooperation, what everybody's requirement is, and it is

14  sufficient on its face.

15      THE COURT:  All right.

16      MR. STROUD:  I agree with that, Your Honor.

17      THE COURT:  All right.  Let me explain basically what

18  all of this means, Mr. Maweu.  You can help yourself by

19  cooperating with the Government.  There are sets of

20  circumstances that allow me to reduce your sentence.

21      We're going to go through the scoring and so forth of the

22  guidelines, but there is what is called substantial assistance.

23  If you provide cooperation that rises to the level of

24  substantial assistance in the opinion of the Government, they

25  can file what is called a 5K1 motion that allows me to take a

1    sentence and reduce it.

2         A 5K1 motion does not allow me to go below the 20-year

3    mandatory minimum even if I grant that motion; so that becomes

4    a floor under a 5K1.  And it may not ever get to that 20-year

5    mandatory minimum; it could be higher up in there.  I don't

6    know.

7         The second level of cooperation can occur based on the

8    Government's evaluation of the nature and timeliness of your

9    cooperation within one year from today's date.  That's called a

10   3553(e) motion.  That's a different animal than a 5K1.  That

11   level of cooperation, if the Government chooses to file the

12   motion -- and I can't force them to do that -- can allow me,

13   even after you've been sentenced, to reduce your sentence below

14   the statutory minimum.

15        Do you see how cooperation can help you?

16             THE DEFENDANT:  Yes.

17             THE COURT:  It's to your benefit, in other words.  As

18   long as you're truthful and divulging information and so forth

19   and so on, it will definitely be to your benefit at sentencing

20   or, for information provided after that time, may be after you

21   actually have been sentenced to the department of prisons for

22   one year from today's date forward.

23        It's important that if you do decide to cooperate, I

24   would suggest that you divulge what information you have

25   completely and quickly.  Giving out information in bits and

1    pieces over a long period of time may result in the Government

2    doing absolutely nothing to help you even though you

3    technically have cooperated.  Do you understand?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  All right.  Is there anything about this

6    plea agreement that you do not understand, sir?

7           THE DEFENDANT:  No, Your Honor.

8           THE COURT:  Let's talk about sentencing under the

9    United States Sentencing Guidelines.  And from your comments a

10   little earlier, it seems that your lawyer has spent some time

11   with you explaining how these guidelines are used in our

12   system?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Is there any -- let me ask this:  Is

15   there any other promise that's been made to you, other than

16   what's recited in that Plea Agreement, that led you to plead

17   guilty?

18          THE DEFENDANT:  No.

19          THE COURT:  All right.  Mr. Walker?

20          MR. WALKER:  It is the entirety of the agreement, the

21   plea packet.

22          THE COURT:  No side agreements, gentleman's

23   agreements of that sort?

24          MR. WALKER:  Never under any circumstance.

25          MR. STROUD:  That's correct, Your Honor.  The Plea

1   Agreement is a reflection of our entire agreement.

2            THE COURT:  Very well.  Let's talk about sentencing.

3        You have a blue chart in plastic up at the podium.

4   Mine's yellow.  The reason mine's yellow is I know it belongs

5   up here and the blue one belongs there.  That's the only

6   difference between the two.

7        In this particular instance, has your attorney made a

8   prediction or a prophecy or even a promise to you as to what

9   your sentence will be from me?

10           THE DEFENDANT:  Your Honor, he told me that it's

11  entirely to your discretion.

12           THE COURT:  That's correct.  Subject to that 20-year

13  mandatory minimum sentence.

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  We know that's the minimum that will

16  apply in this particular case.

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  And I am the only one in this

19  courtroom having the authority to sentence you.  Your lawyer

20  doesn't have that authority.  Mr. Walker, for the government,

21  does not have that authority.  You understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Your lawyer does have the responsibility

24  of going over with you line by line what is called a

25  presentence report.

1       At the end of today's hearing, what I'm going to do is

2    order that an investigation begin that will tell me everything

3    about your social history from birth forward, right up until

4    the current time.  It will do two specific calculations so that

5    the guidelines can be applied.

6       You'll see on this chart there's an offense level

7    beginning at the top with the number 1 and running down the

8    left column all the way to number 43.

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  In this instance, I don't know what your

11   net offense level is going to be.  Your crime, like any crime

12   in the federal system, has a numeric value between 1 and 43 as

13   a starting point.  There are certain things that can move that

14   down toward 43, and there's certain other things, like

15   accepting responsibility in a timely fashion, that can take

16   away points and move it closer to number 1.

17      I don't know what those are, but I am here to tell you

18   that the system that is used will be detailed in a report that

19   will be written up telling me about how this crime is

20   evaluated.  It will tell me about any other crimes you've been

21   convicted of.  It will tell me about other activities, called

22   relevant conduct, that I have to look at in order to determine

23   what a reasonable sentence, under all of the circumstances,

24   that you have.  That's my responsibility.  Do you understand

25   that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  I have no idea, as I sit here today

3    telling you, what your sentence will be.  Is that clear?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  The other thing that that particular

6    presentence investigation and a written report will tell me is

7    what your criminal history category is, Roman numerals I

8    through VI running from left to right.

9          So once we determine what your criminal history is, it's

10   a fairly easy matter, since you've got a net offense level --

11   let's assume that yours is a level -- oh, let's say a 36.  And

12   let's suppose this is the first time you've committed a crime

13   that's countable under our federal law.  You simply look where

14   the two lines intersect, and you see those numbers, 188 dash

15   235?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  The guidelines -- that's the recommended

18   range under the guidelines for me to consider in determining an

19   appropriate sentence for you.  Okay?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  By law, we have to have accurate

22   information in the presentence report and we have to have it

23   accurately applied under the guidelines in order to make use of

24   this chart.  Okay?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  When I first became a judge, it was

2     mandatory that I sentence you to between 188 and 235 except in

3     special circumstances.  That is no longer true.  These are, in

4     fact, guidelines.  That means I can sentence you to somewhere

5     else that you fall on this chart because of certain reasons, or

6     I can sentence you based on what are called Section 3553(a)

7     factors.  Our statutes include those kinds of concerns that

8     judges may consider in determining your sentence.  They're not

9     expressed anywhere in the Guidelines; so in the U.S. Fifth

10    Circuit, that's called a  non-Guideline sentence.

11         Your lawyer is going to get a copy of this presentence

12    report we've been talking about.  Mr. Walker will too, and a

13    copy comes to me.  He will go over that with you line by line.

14    If he finds there are factual objections or legal conclusion

15    objections, he will file a set with the probation office, the

16    Court, and with Mr. Walker.

17         Now, the Government gets a copy of it and can also

18    object, if it chooses.

19         Many times there are no objections at all.  Other times

20    the objections that are filed can be worked out between your

21    lawyer, the Government, and the probation officer.  But if

22    there are any objections that can't be resolved, then it

23    becomes my duty at the time of your sentencing to rule on those

24    objections.

25         Sometimes they affect where you fall on this chart.

1    Sometimes it may matter on factors that I need to take into

2    account that were not contained in the presentence report.

3         But I don't know what your sentence will be.  I don't

4    know whether it's a Guideline sentence.  But I do know it's a

5    statutory minimum.  I don't know if 3553(a) factors will apply

6    to you or not.  But under our law, I have to advise you about

7    these possibilities.  Do you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Should you come to court believing that

10   you will receive a specific sentence -- let's just call it the

11   statutory minimum by example.  Not saying it's going to be or

12   not.  But if you believe you're only going to be sentenced to

13   the statutory minimum and I end up sentencing you to more time

14   than you anticipated -- and I'm not saying that's going to

15   happen, but if it does happen, I have to advise you of one very

16   important limitation:  If you don't like the sentence that I

17   impose, you can appeal that; however, just because you don't

18   like the sentence imposed, that gives you no legal right to

19   withdraw the guilty plea that you've entered today.  Is that

20   clear?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Since you've acknowledged to me you are,

23   in fact, guilty as charged in Count 1 of the fourth superseding

24   indictment, since you know your rights to a trial, what the

25   maximum possible punishment is and what the mandatory statutory

1  minimum punishment is, and because you are voluntarily pleading

2  guilty today, I am going to accept your guilty plea, as well as

3  the Plea Agreement, and enter a judgment of guilty on the basis

4  of your sworn plea today in open court.

5        This Court finds that Mr. Maweu's plea is free and

6  voluntary; second, that the defendant fully understands the

7  nature of the charges and possible penalties; third, that the

8  Plea Agreement has been properly explained to him, signed by

9  the defendant, approved by counsel, and filed into the record

10  of today's proceedings; and, finally, that there is a

11  sufficient factual basis for the entry of his guilty plea to

12  Count 1 based from the written factual basis explained to the

13  defendant, signed by the defendant, approved by counsel and

14  filed into the record of today's proceedings, as well as the

15  defendant's own admissions of guilt today made under oath.

16        The clerk is now ordered to enter a plea of guilty.

17        Mr. Maweu, you now stand convicted as charged in Count 1

18  of that indictment.

19        The presentence investigation and the presentence report

20  and writing we talked about I now order be done.  I'm going to

21  urge you to cooperate in furnishing information to be included

22  in that presentence report.  There's one simple reason for

23  that:  That presentence report becomes the single most

24  important document I'm going to use in determining your

25  sentence.  Clear enough?

 1          THE DEFENDANT:  Yes, Your Honor.

 2          THE COURT:  Any letters of support considered --

 3    concerning sentencing are to be submitted through your counsel

 4    of record, collated in your office and provided to the Court

 5    not later than 10 days before sentencing.

 6          Sentencing in this instance will be set for July 14,

 7    2015, at 10:00 a.m. in the morning.

 8          Mr. Maweu, I see that you are currently in custody of the

 9    United States Marshals Service.  It's my order that you remain

10    in custody pending the time of your sentencing.

11          Anything further that needs to be brought out or covered

12    today before we adjourn?

13              MR. WALKER:  No, Your Honor.  Thank you.

14              THE COURT:  Mr. Stroud?

15              MR. STROUD:  Nothing from the defense, Your Honor.

16              THE COURT:  Very well, then.  With no further

17    business to come before the Court today, we are adjourned.

18          Mr. Stroud, thank you for making the trek.

19              MR. STROUD:  Glad to be here, Your Honor.

20          (Proceedings concluded at 12:07 p.m.)

21    /

22    /

23    /

24    /

25    /

1                          Certificate

2    I hereby certify this 5th day of January, 2016, that the
     foregoing is, to the best of my ability and understanding, a
3    true and correct transcript from the record of proceedings in
     the above-entitled matter.

4

5                               /s/ Marie M. Runyon
                                Official Court Reporter
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25