

1    UNITED STATES DISTRICT COURT

2    WESTERN DISTRICT OF LOUISIANA

3    SHREVEPORT DIVISION

4

5    UNITED STATES OF AMERICA        )
                                     )    Criminal Action
     VS.                             )    No. 5:10-CR-0319-11
6                                    )
     BRIAN MUSOMBA MAWEU             )
7    _____ )

8

9

10   OFFICIAL TRANSCRIPT OF PROCEEDINGS - SENTENCING
     BEFORE THE HONORABLE S. MAURICE HICKS, JR.
         UNITED STATES DISTRICT JUDGE
11        SEPTEMBER 28, 2015; 1:30 P.M.
            SHREVEPORT, LOUISIANA

12

13   **FOR THE GOVERNMENT:**
         Mr. John Luke Walker
14       Mr. Frederick Michael O'Mara
         U.S. Attorney's Office
15       800 Lafayette Street, Suite 2200
         Lafayette, Louisiana  70501

16
     **FOR THE DEFENDANT:**
17       Mr. John F. Stroud, III
         Law Office of John F. Stroud, III
18       515 Main Street
         Texarkana, TX  75501

19

20

21

     Produced by mechanical stenography, transcript produced by
22   computer.

23   _____
              **MARIE M. RUNYON, RMR, CRR**
24          FEDERAL OFFICIAL COURT REPORTER
             300 FANNIN STREET, ROOM 4212
25          SHREVEPORT, LOUISIANA  71101
                 (318) 222-9203

 1          (Court called to order with the defendant

 2      present at 1:47 p.m.)

 3          THE COURT:  Good afternoon.  Please be seated.

 4      All right.  Court will come to order.  On this

 5  afternoon's docket is a sentencing hearing in the matter of

 6  United States vs. Brian Musomba Maweu, also known as "Catfish."

 7          Mr. Walker, you're here on behalf of the government?

 8          MR. WALKER:  I am, Your Honor.  And can I say one

 9  thing?

10          THE COURT:  Yes.

11          MR. WALKER:  I received something from the Clerk's

12  Office saying that there was a misspelling in PACER where they

13  misspelled his name.  It should be spelled M-a-w-e-u, and the

14  clerk, for some reason, when it was put in PACER, spelled it

15  M-a-m-e-u.  And I would simply ask that it be corrected in

16  PACER.

17          THE COURT:  So ordered.

18          MR. WALKER:  Thank you.

19          THE COURT:  Denise, would you take care of that,

20  please, or find someone that can do that.

21          And Mr. John F. Stroud III, as appointed counsel for the

22  defendant?

23          MR. STROUD:  We're ready, Your Honor.

24          THE COURT:  All right.  Thank you.

25          We're here as a result of the entry of a guilty plea to

1   Count 1, engaging in a child exploitation enterprise, in

2   violation of Title 18, Section 2252A(g) of the U.S. Code.

3        We have a calculated offense level in the presentence

4   report of Level 38 with a criminal history category of I.

5        In this particular instance, both sides have had an

6   opportunity to review the presentence report.  It confirms that

7   the statutory range for this particular crime is 20 years to

8   life.  The guideline range calculates from 235 to 293 months.

9   The Court notes the low end of the range, 235, would be

10  reformed to 240 months because of the statutory minimum.

11       In this instance, we have some objections to deal with.

12       Mr. Stroud, with respect to paragraph 16, I don't see

13  that that impacts the guideline calculation.  The issue was

14  whether it's an SVIP or an SVIP Dot -- am I correct?  -- as a

15  membership level?

16            MR. WALKER:  He was a membership level SVIP Dot.  And

17  I don't think there's an argument from the defense that he was

18  an SVIP Dot.  I believe what he was arguing is that he was

19  primarily made that because he was paying to host the company

20  versus the fact that he was posting in his own produced

21  material.

22            THE COURT:  All right.

23            MR. STROUD:  That is correct, Your Honor, as far as

24  our argument on that.  And the Court is correct, that does not

25  have a bearing on the guideline range in this case.  It's just

1   when I visited with my client regarding the presentence report,

2   he wanted me to bring that difference to the Court's attention.

3            THE COURT:  Then what I will do is this:  I don't

4   think that a ruling is necessary; however, to the extent that a

5   ruling is required by the Court because of that point being

6   raised in the form of an objection, I will overrule it just so

7   that the record is complete.

8        There is paragraph 43 with respect to having poor

9   eyesight and being in need of reading glasses.  Once again, the

10  PSR has been revised to include that information on page 9,

11  under paragraph 47; am I correct, Mr. Stroud?

12           MR. STROUD:  That's correct, Your Honor.  My client

13  just wanted to make sure the Bureau of Prisons was aware of

14  that need on his behalf, and that's why we included that in the

15  response to the presentence report, Your Honor.

16           THE COURT:  Does he -- do they allow reading glasses?

17           MR. WALKER:  They do, I believe, Your Honor.  He had

18  reading glasses, I think -- the first time I met with him, I

19  thought he had reading glasses.

20           MR. STROUD:  He had been given a pair by another

21  inmate at the Bossier detention center, Your Honor.  But in

22  being transferred to the Bureau of Prisons, he wanted to have

23  that included in the report so they'd be aware of that

24  necessity on his behalf.

25           THE COURT:  All right.  Very well.  So ordered.

1    In this instance, we have -- the Government asked that

2    additional factual information be placed in the presentence

3    report.  I understand that that has been added without

4    objection, found at paragraphs 17 to 19, on page 6; is that

5    correct, Mr. Walker?

6         MR. WALKER:  That's correct, Your Honor.

7         THE COURT:  And, Mr. Stroud, once again, there was no

8    objection to the inclusion of the additional factual

9    information?

10        MR. STROUD:  That's correct, Your Honor.

11        THE COURT:  All right.  Very well.

12   With the guidelines, then, at an offense level of 38 and

13   a criminal history category of I, Mr. Walker, have the

14   guidelines been correctly calculated?

15        MR. WALKER:  They have, Your Honor.

16        THE COURT:  Mr. Stroud, have the guidelines been

17   correctly calculated?

18        MR. STROUD:  We have no objection to the guidelines

19   and feel that they are correct, Your Honor.

20        THE COURT:  All right.  Thank you very much.

21   With respect to additional sentencing materials, access

22   to the Government's sentencing memorandum, record document 831

23   was placed under seal; is that correct?

24        MR. WALKER:  That is correct, Your Honor, as well as

25   the attachment.  And the attachment was presented under

1    separate cover.

2           THE COURT:  That's correct.

3       And any objection to that remaining under seal in this

4    circumstance?

5           MR. STROUD:  No, Your Honor.

6           THE COURT:  All right.  Likewise, the defendant's

7    sentencing memorandum, record document No. 832, is likewise

8    sealed.

9       The Court has reviewed each of those memoranda.

10      And we come to personal remarks.  Would your client like

11   to address the Court, Mr. Stroud, before sentence is imposed?

12          MR. STROUD:  Your Honor, Mr. Maweu would decline to

13   make any statement for the Court.  He has asked me to make a

14   few brief remarks on his behalf.

15          THE COURT:  All right.  If you'd come up to this

16   center podium, where I can be sure I hear you clearly.

17          MR. STROUD:  Thank you, Your Honor.

18      Mr. Maweu had just asked that the -- me to ask the Court

19   to consider the issues raised in the sentencing memorandum.  He

20   had, of course, noted his remorse for his involvement in this

21   at the time of his plea, and that has not changed.  And he

22   would just ask the Court to follow the guideline range as set

23   forth in the presentence report, Your Honor.

24      And that would conclude my remarks.

25          THE COURT:  All right, Mr. Stroud.  Thank you.

1            MR. STROUD:  Thank you.

2            THE COURT:  In this instance, Mr. Walker, do you have

3   anything to add or to argue with respect to the imposition of

4   sentence?

5            MR. WALKER:  My sentencing memorandum, Your Honor, is

6   extremely complete in describing why we believe a deviation

7   from the guidelines is appropriate and justified in this case,

8   specifically the repeated acts of molestation, the fact that he

9   was producing material that he had, in fact, created with very

10  young children, the fact that he had a separate website where

11  he was producing material and offering to produce material for

12  individuals who are willing to pay for that material.  All of

13  those things put him in a completely different class than any

14  defendant who has been sentenced to date in the Dreamboard

15  case.

16       Other than the administrator and perhaps one other

17  person, Dasha Forever, his acts of production, his acts of

18  exploitation of actual live children put him in a different

19  class.  And that's the reason we've asked for such a

20  significant deviation upward, and we believe it's appropriate.

21       And, finally, he is one of only six people who were Super

22  VIP Dots.  And even if the reason he was initially put as a

23  Super VIP Dot is because of the fact he was paying to have

24  Dreamboard hosted, which in itself is something going beyond

25  what anybody else in the Dreamboard case who has pled guilty or

1  been convicted to date did, he was also actively producing and

2  posting material that he had produced.

3          THE COURT:  All right.  In this particular instance,

4  for the record and for anyone reading this record in the Fifth

5  Circuit, Dreamboard has different classifications, the top two

6  being, in all capital letters, quote, "SVIP," end quote.  In

7  this particular instance, when the Court and counsel refer to

8  "SVIP Dot," it is referred to as, quote, in all capital

9  letters, "SVIP.", with a period, which is, of course, the dot,

10  end quote.

11      In this particular instance, the Court has read the

12  detailed sentencing memoranda by the Government and concurs

13  that of the 72 defendants that have been named in the

14  Dreamboard indictment, that Mr. Maweu stands in a rather unique

15  position.  He actually is the only one, to my knowledge, out of

16  those who have been either tried and found guilty or pled

17  guilty -- there are a number of people that have not even been

18  located yet; am I correct on that?

19          MR. WALKER:  That is correct.  We're still looking.

20          THE COURT:  In this instance, he paid a hosting

21  company to place Dreamboard as a website on the Internet, and

22  he stands in a unique position of facilitating and supporting

23  the administration of the Dreamboard website itself, except

24  perhaps for Hawkeye, who is the lead administrator, and Legend,

25  also known as "Oedewaldt," as a security administrator and the

1  one that actually suggested how to repost things posted in the

2  wrong areas of Dreamboard.  Mr. Maweu stands, so far, as the

3  worst of the worst.  And I've seen some pretty bad stuff in

4  connection with Dreamboard.

5      The facts reflect that Mr. Maweu also had a separate

6  website, apparently owned and operated by him, known as, quote,

7  "My African Girls," end quote.  This website allowed

8  individuals to pay for memberships, and they could ask

9  Mr. Maweu to produce child pornography for which they would

10  pay.  And the Court refers to Attachment A, also under seal, to

11  the memorandum of the Government in this particular matter.

12      In this instance, it is the Court's understanding that

13  the payment for prescribed molestations and other abuses of

14  children on My African Girls involved the ability of the seeker

15  to define age, gender, and specific acts of molestation that

16  would be performed and filmed and then sold or distributed to

17  that individual, if not others.

18      It is also noteworthy that Mr. Maweu is responsible for

19  the Goldberg series, a rather infamous site itself which

20  includes the images and videos of various prepubescent children

21  being exploited, in fact, by the defendant himself.  It appears

22  that he created in excess of 50 videos of child pornography in

23  the Goldberg series alone.  The Court refers to Attachment B to

24  the Government's sealed sentencing memorandum as well.

25      In this particular instance, Level 38 as a calculated net

1    offense level, under the circumstances, really does not

2    properly capture the egregious and monstrous conduct of the

3    defendant in making money off of selected molestations of

4    children.  In this particular instance, Mr. Maweu was a

5    producer and the one who actively sexually exploited children

6    and produced images of that exploitation and those

7    exploitations for money.

8         With respect to his administrative post with Dreamboard

9    and allowing Dreamboard to make it onto the Internet in

10   connection with the administrator Hawkeye and the encryption

11   and security specialist, Mr. Oedewaldt, also known as "Legend,"

12   it indicates a consistent pattern of child exploitation

13   behavior that goes beyond any that have appeared before this

14   Court.  And I believe we've done in excess of 59 of these 72

15   original defendants.

16        In short, Mr. Maweu is by far the worst that this Court

17   has seen in Dreamboard and other child exploitation and

18   molestation cases that this Court has handled in 12 years.  The

19   sheer number of children kept for the purpose of molestation by

20   Mr. Maweu and the number that he molested overshadows anything

21   that this Court has seen.

22        This Court declines specifically to use a Guideline

23   sentence in this case because it does not capture the

24   reprehensible conduct engaged in by this defendant over and

25   over and over again.  Section 3553(a), this Court believes, is

1    a more appropriate guide to be used in determining the sentence
2    to be imposed in this particular matter.

3        Section 3553(a) requires that a court impose a sentence
4    that is sufficient but not greater than necessary to comply
5    with his purposes.

6        In this particular application of Section 3553(a)(3) and
7    (4), the kinds of sentences that are available in the
8    sentencing range established for the category of this offense
9    and this category of the defendant simply are not properly
10   captured or analyzable or included in the Level 38 calculation.

11       The nature and circumstances of this offense, the
12   monstrous behavior, the lack of caring for individual children
13   that are prepubescent is beyond the ken of the average judge,
14   and it's certainly beyond my ken in experience with child
15   pornography cases, including the production of child
16   pornography.

17       Section 3553(a)(2)(A) indicates the factor that can be
18   considered by the court is the need to reflect the seriousness
19   of the offense, provide just punishment, and promote respect
20   for the law.

21       This Court notes that Mr. Maweu is Kenyan and that his
22   actions not only by posting but by allowing Dreamboard to be
23   included on the Internet, and the production of African Girls
24   and the Goldberg series, in this particular matter militates
25   strongly in favor of only one sentence that is truly

1   appropriate under all the sets of circumstances that I have

2   before me in your presentence report, Mr. Maweu, and that is a

3   lifetime in federal incarceration.

4        The violence that is involved with children and the

5   molestations that you have committed goes beyond the pale.

6        In this instance, there was no other reasonable

7   alternative, frankly, in this Court's opinion, except to have

8   you, because of your violent repetitive behavior against

9   prepubescent children for money and for the sheer purpose of

10  exploitation and sexual gratification of many, many others who

11  accessed those sites -- dictates that life imprisonment in a

12  federal correctional facility is the least that I can sentence

13  you to.

14       In this instance, lifetime is the greatest sentence under

15  the law that I can impose upon you, Mr. Maweu.

16       I would hope that the imposition of a lifetime in prison

17  for the criminal behavior against children that you have

18  personally engaged in sends the signal to others of like-minded

19  behavior to stop, think, and cease and desist that kind of

20  behavior.

21       There is no excuse for this.  I do not find that any

22  culture on earth permits the kind of repetitive behavior of

23  destroying the choices of children, of violating their bodies

24  at young ages, of taking away their first choice of who to have

25  sexual relations from.

1    You clearly abused the authority that you wielded as an

2   adult and engaged in repeated and despicable acts of

3   exploitation with children, for which you are now held

4   accountable in United States District Court.

5    I hope that this sentence that I impose on you today

6   deters many people from engaging in child exploitation behavior

7   the way that you have.  There is no excuse for it other than

8   greed and perversion.

9    The Court has taken into account the measure of

10   cooperation at this particular point, and the Court concurs

11   with the assessment of the prosecutor in this case that at this

12   stage it's simply not enough cooperation to be considered for

13   filing a 5K1.

14    And while I have considered it in imposing this sentence,

15   you still have the opportunity of cooperating further.  I don't

16   know and I cannot predict and I cannot speculate on what any

17   future cooperation might involve or how helpful it would be to

18   the Government.  That's between you, your lawyer, and the

19   Government at this point.

20    Substantial assistance in the form of a Rule 35 motion

21   was not forthcoming.  You simply have not cooperated or

22   provided information to be considered for substantial

23   assistance under the provisions of the Guidelines in Section

24   5K1.1.

25    This Court is fully aware that this is what's called a

1  non-Guideline sentence and is a variance and deviation from
2  what the Guidelines would call for a range of months for you to
3  be incarcerated in federal prison.
4      By placing Dreamboard on the Internet, you specifically
5  facilitated people in the United States getting access to the
6  various membership levels and the various types of despicable
7  child pornography that Dreamboard, as a website, contained.
8      It is important to protect people, wherever located in
9  this world, from your continued contact.  You fed on the
10  despicable acts of molestation people solicited from you and
11  that you provided willingly and for a lot of money.  The
12  children of the United States, of Kenya, and of every other
13  nation in the world deserves a lifetime of protection against
14  your specific behavior, Mr. Maweu, and I have taken that
15  specific factor heavily into consideration in the imposition of
16  your sentence.
17      Therefore, the Court adopts all factual findings
18  contained of the probation office in the presentence report as
19  well as its addenda.
20      Pursuant to the Sentencing Reform Act of 1984, it is the
21  judgment of this Court that the defendant, Brian Musomba Maweu,
22  also known as "Catfish," is hereby committed to the custody of
23  the Bureau of Prisons for a term of life as to Count 1.
24      This sentence was selected after consideration of the
25  factors in Title 18, U.S. Code, Section 3553(a) pertaining to

your personal characteristics, the statutory mandatory minimum sentence of imprisonment, as well as your involvement in the instant offense so aptly described in the presentence report.

This sentence is imposed, further, for the oral reasons given in this court, which are incorporated and adopted in the imposition of sentence by reference.

Upon release from confinement, the defendant is placed on supervised release for a period of life as to Count 1.

Should you ever be released from custody, within 72 hours of that release you are ordered to report to the U.S. probation office in the district into which you are released.

While on supervised release, you shall not commit another federal, state, or local crime; shall not possess a firearm or dangerous weapon; and shall comply with all standard conditions of supervision that are adopted by this Court.

As a special condition of supervised release, while on supervised release, if you leave this country because of deportation, you are ordered never to return to the United States.  If you are later authorized by the attorney general to legally return, you are ordered to report to the nearest U.S. probation office to begin active supervision on your term of supervised release.

Second, Mr. Maweu is ordered to participate in a sex offender-specific mental health treatment program as directed by U.S. Probation, to include polygraph testing.  The defendant

1   is ordered to pay for all such services as directed by the U.S.

2   probation office.

3        Third, Mr. Maweu shall neither possess nor have under his

4   control any material, whether legal or illegal, that contains

5   nudity or that depicts or alludes to sexual activities or

6   depicts sexually arousing material.  This includes, but is not

7   limited to, any material obtained through access to any

8   computer or communication device, including a computer and/or

9   other communication device for employment purposes, or any

10  material linked to computer or communication device access or

11  use.

12       Fourth, this defendant shall not receive or transmit any

13  sexually arousing material, including child pornography, via

14  the Internet, nor visit any website, including chat rooms or

15  bulletin boards, containing any sexually arousing material,

16  including child pornography.

17       The defendant shall install filtering software on any

18  computer he possesses or uses which will monitor or block

19  access to sexually oriented websites.  Likewise, the defendant

20  shall pay all costs of the filtering software and services as

21  directed by U.S. Probation.

22       This Court recommends that Mr. Maweu be deported and

23  ordered never to return to the United States.

24       Upon release from imprisonment, if that occurs, the

25  defendant shall be turned over to appropriate authorities for

1    deportation proceedings.

2         Due to the confinement sentence and the defendant's

3    financial condition, no fine is ordered.  This defendant,

4    however, is ordered to pay $100 to the Crime Victim Fund,

5    payable immediately to the U.S. Clerk of Court.

6         Mr. Maweu, I notify you, sir, that you have a right to

7    appeal.  In the event that a notice of appeal is filed under

8    Title 18, Section 3742 for a review of sentence, the Clerk is

9    directed to transmit the presentence report under seal to the

10   Court of Appeals.

11        If you wish to appeal, the Federal Public Defender's

12   Office will be appointed to represent you and file that notice

13   of appeal.

14        However, Mr. Stroud, it becomes your responsibility to

15   counsel with him with respect to the filing of an appeal and to

16   coordinate those efforts with the Public Defender's Office in

17   order to preserve any such rights he may have to appeal.

18        Mr. Walker?

19             MR. WALKER:  Your Honor, two things.  First, because

20   the Court -- because we presented Attachments A and B under

21   separate cover, we would move, for the purpose of this

22   sentencing hearing, to convert them to exhibits, Exhibits A and

23   B.  And I intend to offer them to the Clerk's Office -- a copy

24   to the Clerk's Office now.  I would, however, ask that they be

25   placed under seal because of the sexually explicit nature of

1    the material.

2              THE COURT:  Noted, and so ordered.

3         Any objection to that tender at this time?

4              MR. STROUD:  None, Your Honor.

5              MR. WALKER:  And, Your Honor, the United States would

6    move to dismiss Counts 2 and 3 of the indictment.

7              THE COURT:  Pursuant to the motion of the Government

8    and in compliance with the Plea Agreement, this Court orders

9    that Counts 2 and 3 in the indictment against this defendant

10   are hereby dismissed.

11        The defendant is remanded to the custody of the United

12   States Marshals Service, where he will be designated for

13   sentencing by the Bureau of Prisons in the facility that they

14   select.

15        I'm going to add one additional note.  I do not control,

16   Mr. Maweu, where you will be sent within the federal prison

17   system.  This Court considers your acts of molestation as

18   depicted in the evidence presented to this Court as specific

19   crimes of violence, and my recommendation is that they put you

20   in the highest maximum security area that is possible under the

21   circumstances.  I don't control it, I don't control where you

22   go, I don't control the inmate counts in any one prison by the

23   Bureau of Prisons, but that's my recommendation.

24             MR. STROUD:  Your Honor, if I could say one thing on

25   the record?

1        THE COURT:  Yes.

2        MR. STROUD:  I have asked Mr. Maweu about the

3   logistics of filing an appeal, and he has indicated that he

4   does not want an appeal filed.  And I just wanted that to be a

5   part of this record, that he had communicated that to me.

6        Is that correct, Brian?

7        THE DEFENDANT:  That's right.

8        MR. STROUD:  You do not want me to file an appeal?

9        THE DEFENDANT:  No.  There's no need for it.  I mean,

10   this is -- this is not justice for me, so it doesn't matter.

11   There are certain powers --

12        MR. STROUD:  So you do not want an appeal filed; is

13   that correct?

14        THE DEFENDANT:  No.  There's no point in an appeal.

15   I don't think I'll get justice.

16        MR. STROUD:  Thank you, Your Honor.

17        THE COURT:  Marie, were you able to pick up his

18   response?

19        (Court Reporter responds in the affirmative.)

20        THE COURT:  Is there any reason why this sentence as

21   stated should not be imposed, Mr. Walker?

22        MR. WALKER:  None, Your Honor.

23        THE COURT:  Mr. Stroud?

24        MR. STROUD:  None from the defense, Your Honor.

25        THE COURT:  The sentence is hereby imposed as stated.

1        The Court notes that with respect to counsel's inquiry

2    made in open court to the defendant, the defendant noted that

3    he did not wish to appeal.  That still will require you to go

4    through the process, despite his oral decision.

5        He has 14 days from the entry of judgment today in order

6    to make that decision final, and if you would bulldog this for

7    the next 14 days in connection with the Federal Public

8    Defender's Office.  It may be necessary for you to continue

9    with it if he changes his mind.

10            MR. STROUD:  I will visit with him prior to the

11    expiration of 14 days, Your Honor.  Thank you.

12            THE COURT:  And I know it's a long drive from

13    wherever you are to Plain Dealing, Louisiana.

14            MR. STROUD:  Not too bad.  With the Interstate, Your

15    Honor, it's no problem at all.  And there's no --

16            THE COURT:  It helps a bunch.  It does indeed.

17        Very well.  Anything further to come before this Court

18    this afternoon?

19            MR. WALKER:  Nothing, Your Honor.  Thank you.

20            THE COURT:  Thank you very much.  With nothing

21    further, this court is adjourned.

22        (Proceedings concluded at 2:18 p.m.)

23    /

24    /

25    /

1                              Certificate

2      I hereby certify this 6th day of January, 2016, that the
       foregoing is, to the best of my ability and understanding, a
3      true and correct transcript from the record of proceedings in
       the above-entitled matter.

4

5                              /s/ Marie M. Runyon
                               Official Court Reporter
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25