# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **NO. 10-CR-00319-11** |
| | * | **NO. 16-CV-01273** |
| **VERSUS** | * | |
| | * | **JUDGE HICKS** |
| **BRIAN MUSOMBA MAWEU** | * | **MAGISTRATE JUDGE HORNSBY** |

## UNITED STATES' EXHIBITS IN SUPPORT OF
## RESPONSE IN OPPOSITION TO
## THE DEFENDANT'S § 2255 MOTION

| Exhibit Number | Description |
|---|---|
| 1 | U.S. Extradition Request |
| 2 | Kenyan Order on Extradition |
| 3 | AUSA Walker's letter dated 10/10/14 |
| 4 | DVD containing discovery materials (manual attachment) |
| 5 | Hard copy of discovery material from Stroud's file (USPIS Report) |
| 6 | Hard copy of discovery material from Stroud's file (email messages, etc.) |
| 7 | Maweu's letter dated 3/3/15 |
| 8 | Stroud's CJA voucher submitted 11/30/15 |
| 9 | Maweu's letter received 3/26/15 |
| 10 | Maweu's letter dated 4/4/15 |
| 11 | Stroud's fax transmittal sheet dated 3/20/15 |
| 12 | AUSA Walker's objections to the PSR dated 6/18/15 |
| 13 | Stroud's objections to the PSR dated 6/9/15 |
| 14 | Maweu's letter dated 8/13/15 |
| 15 | Stroud's letter dated 9/8/15 |
| 16 | Maweu's letter dated 9/19/15 |
| 17 | Document titled "Allocution" |
| 18 | Maweu's letter received 12/1/14 |
| 19 | Maweu's letter received 12/17/14 |
| 20 | Maweu's letter received 1/16/15 |
| 21 | Maweu's letter dated 1/30/15 |
| 22 | USPO fax transmittal sheet dated 6/24/15 |

GOVERNMENT
EXHIBIT
1

11038204-1

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

...tify That the document hereunto annexed is under the Seal of the Department of Justice ...nited States of America, and that such Seal is entitled to full faith and credit.

*This certificate is not valid if it is removed or altered in any way whatsoever*



In testimony whereof, I, Hillary Rodham Clinton, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this fifth day of July, 2011.

*Hillary Rodham Clinton*

Secretary of State

By *Tennesia O. Crawford*

Assistant Authentication Officer,
Department of State

Issued pursu... CH... ...tate of
Sept. 15, 17... ...Sta... ...9; 22
USC 2657; ... 26... ...USC
301; 28 USC ...et. ...USC
1443(f); RUL... ...Fede... ...les of
Civil Procedu...

# United States
# Department of Justice



Washington, D.C., _____July 01_____ , 20<u>11</u>

T~~o all to wh~~om these presents shall come, Greeting:

_____ That _____Jeffrey M. Olson_____ whose name is signed

to ~~the a~~ccompanying paper, is now, and was at the time of signing the same,

A~~ssociate~~ Director, Office of International Affairs, Criminal Division,

U~~S Dep~~artment of Justice, Washington, D.C.

_____ duly commissioned and qualified.

In wi~~tness~~ whereof, I, _____Eric H. Holder, Jr._____

Attorney General of the United States,
have hereunto caused the Seal of the
Department of Justice to be affixed and
my name to be attested by the Director/
Deputy Director, Office of International
Affairs, Criminal Division, of the said
Department on the day and year first
above written.

_____Eric Holder Jr._____
**Attorney General**

By _____Randy Toledo_____
Director/Deputy Director, Office of International Affairs,
Criminal Division

CRM-181
APR 98

C E R T I F I C A T E

I, Jeffrey M. Olson, Associate Director, Office of International Affairs, United States Department of Justice, United States of America, do hereby certify that attached hereto is the original Affidavit, with attachments, of Anitha S. Ibrahim, Trial Attorney in the Child Exploitation and Obscenity Section of the Criminal Division of the United States Department of Justice, which were sworn to before the Honorable John M. Facciola, a United States Magistrate Judge for the District Court for the District of Columbia, on June 28, 2011, and which is offered in support of the request for the arrest and surrender of **Brian Musomba Maweu** from Kenya.

True copies of these documents are maintained in the official files of the United States Department of Justice in Washington, D.C.

July 1, 2011
_____
DATE

_____
Jeffrey M. Olson
Associate Director
Office of International Affairs
Criminal Division
Department of Justice
United States of America

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | AFFIDAVIT IN SUPPORT OF EXTRADITION |
| | : | |
| v. | : | CRIMINAL NO. 10-CR-00319 |
| | : | |
| BRIAN MUSOMBA MAWEU also known as Catfish | : | |
| | : | |

I, ANITHA S. IBRAHIM, being duly sworn, hereby depose and state:

1.     I am a citizen of the United States and a resident of the State of Maryland.

2.     In May of 2002, I received a Bachelor of Science degree from the University of Colorado in Boulder, Colorado.  In May of 2007, I received a Doctorate of Law degree from University of California, Hastings College of the Law.  I was admitted to the bar of the State of California in 2007.

3.     From October, 2007, until the present, I have been a criminal prosecutor with the United States Department of Justice, assigned as a Trial Attorney to the Child Exploitation and Obscenity Section.  My duties are to prosecute persons charged with criminal violations of the laws of the United States.   Based on my training and experience, I am an expert in the criminal laws and procedures of the United States.

4.     In the course of my official duties I have become familiar with the charges and evidence in the case against BRIAN MUSOMBA MAWEU a/k/a Catfish, the defendant.   This prosecution arose from an investigation by the U.S. Department of Homeland Security, into a

-1-

members-only Internet-based bulletin board, "Bulletin Board A."[1]   This bulletin board is dedicated to the advertisement and distribution of hardcore child pornography, including images and videos of infants and prepubescent minors being raped and in distress.  "Bulletin Board A" also contained a section for individuals actively producing and trading their own child pornography.   Members of "Bulletin Board A" used the main areas of the board and private messages to communicate with each other, and to advertise, distribute and discuss child pornography and the sexual exploitation of children.   The instant investigation revealed that BRIAN MUSOMBA MAWEU a/k/a Catfish was an active member of "Bulletin Board A" from June 19, 2009, until August 2010.  "Bulletin Board A" was hosted on servers located in the United States.

### I. The Grand Jury Process

5.      Under the federal law of the United States, a criminal prosecution may commence when a grand jury files an indictment.  Institutionally, a grand jury, though an arm of the court, is an independent body composed of private citizens -- not less than 16 and not more than 23 people -- whom the United States District Court selects at random from the residents of the judicial district in which the court resides.   The purpose of the grand jury is to review the evidence of crimes presented to it by United States law enforcement authorities.   After independently reviewing this evidence, each member of the grand jury must determine whether there is probable cause to believe that a crime has been committed and that a particular person or persons committed that crime.  If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person or persons committed the crime, the

---

[1]  For purposes of the confidentiality and integrity of the investigations involved in this matter, specific names and other identifying factors have been replaced with generic terms.

grand jury may return an indictment. An indictment is a formal written accusation that charges the particular person or persons, now defendants, with a crime, identifies the specific laws that the defendants are accused of violating, and specifies the date and place where the charged crime occurred.

6.      The grand jury initiates the criminal prosecution when it files the indictment with the United States District Court. If additional evidence is presented to a grand jury as to the defendants against whom an indictment has already been returned, the grand jury may return a superseding indictment using the same procedure as is used with an original indictment. In such instance, the superseding indictment may take the place of the previous indictment. If still more evidence is presented to a grand jury after a superseding indictment has been returned, the grand jury may return a second superseding indictment that takes the place of the earlier superseding indictment and so forth. Warrants for the arrest of the defendants may issue from a superseding indictment, or subsequent superseding indictment, by using the same procedure as is used to issue a warrant for arrest on an original indictment.

**II. The Charges and Pertinent United States Law**

7.      On October 13, 2010, shortly after completion of the investigation, a grand jury sitting in Shreveport, Louisiana, returned an indictment charging JOHN DOE #9 a/k/a Catfish and 26 others with violations of Title 18, United States Code ("U.S.C."), Sections 2252A(g), 2251(d)(1) & (e) and 2252A(a)(2)(A) & (b)(1) and filed this indictment with the United States District Court for the Western District of Louisiana. On November 10, 2010, the same grand jury returned a superceding indictment charging JOHN DOE #9 a/k/a Catfish and 27 others with the same criminal offenses against the laws of the United States. On January 11, 2011, the same grand jury returned a Second Superseding Indictment charging BRIAN MUSOMBA MAWEU

-3-

a/k/a Catfish, who had previously been charged as JOHN DOE #9, and 27 others with the same criminal offenses against the laws of the United States. On March 16, 2011, the same grand jury returned a Third Superseding Indictment charging BRIAN MUSOMBA MAWEU a/k/a Catfish, and 25 others with the same criminal offenses against the laws of the United States. It is the practice of the United States District Court for the Western District of Louisiana to retain the original indictment and file it with the records of the court. Therefore, I have obtained a copy of the Third Superseding Indictment from the clerk of the court and attached it to this statement as Exhibit A. The indictment in this case is under seal by order of the United States District Court for the Western District of Louisiana. Per that order, no public disclosure of the charging document or matters related to the case may be made. In addition, although some of the individuals charged in the sealed indictment have been apprehended, numerous others remain at large. Disclosure of the sealed indictment would jeopardize attempts to capture those persons and risk their flight or the destruction of evidence. Accordingly, please keep this request, and particularly the copy of the indictment, confidential to the extent possible. In addition, please advise all who must be made aware of this request that the request, its contents and its subject matter are to be kept confidential and should not be shared except as described above. Furthermore, portions of Exhibit A relating to the identities of other charged subjects and the name of "Bulletin Board A" have been redacted in order to protect the confidentiality and integrity of the ongoing investigation.

8.    On March 16, 2011, based on the Third Superseding Indictment filed by the grand jury, United States Magistrate Judge Patrick J. Hanna signed a warrant of arrest for BRIAN MUSOMBA MAWEU a/k/a Catfish. It is the practice of the United States District Court for the Western District of Louisiana to retain the original arrest warrant and file it with the records of

-4-

the court.  Therefore, I have obtained a copy of the arrest warrant from the clerk of the court and attached it to this statement as Exhibit B.

9.      The portions of the statutes that are relevant to this case are annexed to this affidavit as Exhibit C.  Each of these statutes was duly enacted and in force at the time the offenses were committed and at the time the indictment was returned.  They remain in full force and effect.  A violation of any of these statutes constitutes a felony under the laws of the United States.

10.      I have also included as part of Exhibit C the true and accurate text of Title 18, United States Code, Section 3299, which is the statute of limitations applicable to the crimes charged in the indictment.  The statute of limitations provides that a defendant may be formally charged with any felony offense under chapter 109A of the United States Code at any time without limitation.

11.      I have thoroughly reviewed the applicable statute of limitations.  Since all of the charged offenses are felony offenses under chapter 109A of the United States Code, the Third Superseding Indictment was filed within the prescribed time.  The prosecution of the charges in this case is therefore not barred by the statute of limitations.

A.      THE CHARGES

The Third Superseding Indictment charges in 3 counts that MAWEU and others committed the following offenses:

Count 1:      Engaging in a Child Exploitation Enterprise, in violation of 18 U.S.C. § 2252A(g);

Count 2:      Conspiracy to Advertise the Distribution of Child Pornography, in violation of 18 U.S.C. § 2251(d)(1) and (e); and

-5-

Count 3:       Conspiracy to Distribute Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).

The United States requests the extradition of MAWEU for all of these offenses. Each count charges a separate offense. Each offense is punishable under a statute that (1) was the duly enacted law of the United States at the time the offense was committed, (2) was the duly enacted law of the United States at the time the superseding indictments were filed, and (3) is currently in effect. Each offense is punishable under United States law by more that one year of imprisonment. Copies of the pertinent sections of these statutes are attached to this statement as Exhibit C.

1.       Count 1

12. Count 1 charges MAWEU with Engaging in a Child Exploitation Enterprise in violation of 18 U.S.C. § 2252A(g). A person engages in a child exploitation enterprise for the purposes of this statute if the person engages in three or more separate incidents of felonious conduct involving the exploitation of children, including the advertisement and distribution of child pornography. The three or more incidents must involve more than one victim, and must be committed in concert with three or more other persons. Thus, the elements of this offense which the government must prove beyond a reasonable doubt are:

First:       that the defendant knowingly participated in an enterprise that advertised and distributed child pornography;

Second:       that the advertisement and distribution of child pornography took place on three or more separate incidents;

-6-

Third:      that the defendant knew or had reason to know that such advertisement and distribution of child pornography was transported in interstate or foreign commerce by computer;

Fourth:     that the advertisement and distribution of child pornography involved more than one victim; and

Fifth:      that the defendant committed these offenses in concert with three or more other persons.

The maximum penalty for this offense is life imprisonment.

13.    The Child Exploitation Enterprise statute was enacted to target individuals who engage in large-scale felonious conduct involving the exploitation of children. The statute permits for prosecution of a group of offenders who work in concert to exploit children. By being an active member of "Bulletin Board A," MAWEU engaged in clearly established felony conduct by committing several distinct acts of advertisement and distribution of child pornography over time with hundreds of confederates and involving numerous victims.

14.    The government will prove the elements of this offense through computer evidence retrieved from the servers that hosted "Bulletin Board A." This evidence shows that "Bulletin Board A" was a secured bulletin board containing hardcore child pornography. "Bulletin Board A" had approximately 600 members and was an active board until August 2010, with members continuing to post links and advertisements to images and videos of child pornography daily. In order to gain access to "Bulletin Board A" an individual was required to post child pornography to the board, and then must have been granted membership by the top administrator, "Administrator A." Each member of "Bulletin Board A" was identified by a screen name. "Bulletin Board A" contained thousands of postings and messages containing child

-7-

pornography and/or advertisements directing members to images and videos of child pornography. Most of the advertisements contained preview images of child pornography that were posted directly on "Bulletin Board A" and also provided a website and password where the actual file(s) could be downloaded.

15.     The evidence will show that "Bulletin Board A" member Catfish posted numerous advertisements offering to distribute child pornography. Three of those incidents occurred on or about June 25, 2009, July 30, 2009, and December 31, 2009, in which Catfish posted advertisements to "Bulletin Board A" offering to distribute three separate files which contained child pornography – that is, images depicting minors engaging in sexually explicit conduct.

2.     Count 2

16.     Count 2 charges MAWEU with Conspiracy to Advertise the Distribution of Child Pornography in violation of 18 U.S.C. § 2251(d)(1) & (e).

17.     Under United States law, a conspiracy is an agreement to commit one or more criminal offenses, in this instance to advertise the distribution of child pornography. The agreement on which the conspiracy is based need not be written or even verbal. It may be a tacit understanding by two or more persons to do something illegal. The conspirators enter into a partnership for a criminal purpose in which each member or participant becomes a partner or agent of every other member. A person may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the identities of all the other members of the conspiracy. If a person has an understanding of the unlawful nature of a plan and knowingly and willfully agrees to it, joining in the plan, that is enough to convict him for conspiracy even though he did not participate previously and/or played only a minor part. In fact, a conspirator can be held criminally responsible for all reasonably foreseeable actions undertaken by other

conspirators in furtherance of the criminal partnership. Moreover, because of this partnership, statements made by a conspirator in the course of and while he is a member of the criminal conspiracy are admissible in evidence not only against that conspirator, but also against all other members of the conspiracy. This is so because, as stated earlier, a conspirator acts as an agent or representative of the other conspirators when he is acting in furtherance of their illegal scheme. Therefore, statements of conspirators made in furtherance of the conspiracy may be deemed to be the statements of all conspirators.

18.     When there is an agreement between two or more parties to achieve the goal of advertising the distribution of child pornography, where the parties possess knowledge of the conspiracy and participate in the conspiracy, and where at least one conspirator commits an overt act in furtherance of the conspiracy, a defendant can be found guilty of conspiracy to advertise the distribution of child pornography. An overt act is any action taken to further the objective of the conspiracy, and need not itself be a criminal act. Thus, in order satisfy its burden of proof and convict MAWEU on Count 2, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements:

| | |
|---|---|
| First: | that two or more persons entered an agreement to advertise the distribution of child pornography; |
| Second: | that the defendant knowingly became a member of the conspiracy to advertise the distribution of child pornography; and |
| Third: | that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy. |

The maximum penalty for this offense is 30 years imprisonment.

19.     The government will prove this offense primarily using the computer evidence retrieved from the servers that hosted Bulletin Board A.  As previously described  in paragraphs 14-15, this evidence contains the child pornography postings of the members of "Bulletin Board A" as well as their screen names and messages the members sent to each other.

3.     Count 3

20.     Count 3 charges MAWEU with Conspiracy to Distribute Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1).

21.     When there is an agreement between two or more parties to achieve the goal of distributing child pornography, where the parties possess knowledge of the conspiracy and participate in the conspiracy, and where at least one conspirator commits an overt act in furtherance of the conspiracy,  a defendant can be found guilty of conspiracy to distribute child pornography.  An overt act is any action taken to further the objective of the conspiracy, and need not itself be a criminal act.  Thus, in order satisfy its burden of proof and convict MAWEU on Count 3, the Government, at trial, must establish beyond a reasonable doubt each of the following essential elements:

First:          that two or more persons entered an agreement to distribute child pornography;

Second:          that the defendant knowingly became a member of the conspiracy to distribute child pornography; and

Third:          that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy.

The maximum penalty for this offense is 20 years imprisonment.

-10-

22.     The government will prove this offense primarily using the computer evidence obtained from the servers that hosted Bulletin Board A.  As previously described  in paragraphs 14-15, this evidence contains the child pornography postings of the members of "Bulletin Board A" as well as their screen names and messages the members sent to each other.

### III.  Summary of the Facts of the Case

Background Information and Explanation of "Bulletin Board A"

23.     In 2009, subjects identified in another child pornography bulletin board investigation participated in voluntary interview sessions with law enforcement officers and revealed information about additional bulletin boards dedicated to the distribution and advertisement of child pornography, including "Bulletin Board A."[2]  "Bulletin Board A" was described as a secured bulletin board containing hardcore child pornography, including images and videos of infants being sexually abused, and also containing a section with images and videos posted by members who were producing the material themselves.  It was also revealed that "Bulletin Board A" was operated and administered by an individual using the screen name "Administrator A."

24.     The domain name associated with "Bulletin Board A" was "http://www.BulletinBoardA.com" and the content of "Bulletin Board A" was hosted on a server owned by Certified Hosting Solutions (hereinafter referred to as CHS), a web hosting company with servers located in the United States of America in the states of Georgia and Nevada.

25.     In January 2010 and June 2010, Special Agents of the United States Department of Homeland Security obtained judicially authorized search warrants from the United States

---

[2]

District Court for the District of Columbia and seized pursuant to the execution of those search warrants a copy of "Bulletin Board A." The copy contained the entire content of the "Bulletin Board A" website as it existed on the date of seizure. An examination of that data revealed that the website was being used to host a password-protected bulletin board devoted to the transmission and discussion of child pornography. In June of 2010, when "Bulletin Board A" was seized, records indicated that it had approximately 600 validated members and that it was an active board, with members continuing to post daily links and advertisements to images and videos of child pornography.

26.     Each member of "Bulletin Board A" was identified by a screen name and an avatar, or small picture that was automatically displayed under the screen name. "Bulletin Board A" contained thousands of postings and messages containing child pornography and/or advertisements directing members to images and videos of child pornography. More specifically, the postings and messages advertised depictions of nude minors engaged in sexually explicit conduct. Most of the advertisements contained preview images of child pornography that were posted directly on "Bulletin Board A" and also provided a website and password where the actual file(s) could be downloaded. "Bulletin Board A" was divided into different subject areas. Some of these areas included a section specifically for individuals who produced their own child pornography and a section for content containing infants and prepubescent minors being raped and in distress.

27.     In order to gain access to "Bulletin Board A," an individual was required to post child pornography to the board, and then must have been granted membership by "Administrator A." Once gaining membership, each member could access the board using a login screen name and password. "Bulletin Board A" listed specific rules, in order to gain membership to the

-12-

board.   Individuals seeking membership were required to upload a certain amount of child pornography to a separate website and provide "Administrator A" with preview images and the web address and password for the complete files.   "Administrator A" required that the images either contained hard core activity or nudity, and that the minors depicted are under 13. "Administrator A" stated that membership would not be granted unless those specific rules were followed.

28.     Members of the board were segregated into a hierarchy of four membership levels by "Administrator A."  Each level of membership permitted access to more content on "Bulletin Board A."  An individual could move up in membership level based upon the number and frequency of posts.  The highest membership level consisted of individuals who produced their own child pornography material.

29.     The main webpage of "Bulletin Board A" was divided into five different areas, and within each of these areas were different sections referred to as "forums."  The forums generally reflected the type of images or videos contained therein.

30.     Within each forum, a member of "Bulletin Board A" could make a posting which is referred to as a "topic."  "Bulletin Board A" contained hundreds of topic posts distributing and advertising child pornography.  Within these posts, members provided preview images of the child pornography they made available for other members along with the web address and user created password where the complete image collection or video of child pornography could be downloaded.

31.     Through the board's rules, instructions were provided to all members regarding how to post preview images and how to make the complete images and videos available on another website.  Members were instructed to upload the full images or video to a separate

-13-

website, and require a password in order to download and decrypt the files.  In the topic post advertising the child pornography, members were instructed to alter a part of the web address so that it could not function as a hyperlink; this modification required another member, seeking to view the advertised content, to manually enter the web address into an Internet browser and make the appropriate changes for the web address to be valid.

32.     In addition to making new topic postings, members could also respond to topics posted by other members of the board.  Members could also communicate directly with each other through the use of private messages.

33.     "Bulletin Board A" did advertise a small amount of adult pornography in the "Over 18 Passwords" forum.  However, this forum only contained 125 topic posts.  In comparison, the "Super Hardcore" forum and "PT Vids" forum each contained 500 and 8794 topic posts, respectively.  Thus, "Bulletin Board A" was dedicated primarily to the advertisement and distribution of child pornography.

<u>Conduct of "Bulletin Board A" Member "Catfish"</u>

34.     As of June, 2010, "Bulletin Board A" member "Catfish," who listed his location on the site as Africa, had posted 121 messages to the site between June, 2009, and June, 2010. The highest number of his posts were in the forum "Homemade Posts Only," where he posted 34 messages (30% of his total).  As charged in the Third Superseding Indictment, BRIAN MUSOMBA MAWEU ("MAWEU") posted an advertisement offering to distribute three separate files which contained child pornography - that is, images depicting minors engaging in sexually explicit conduct - on or about June 25, 2009, July 30, 2009, and December 31, 2009, respectively.

### Identification of BRIAN MUSOMBA MAWEU as "Catfish"

35.     Evidence provided by CHS revealed that another website named "myafricangirls.com" ("MAG") was utilizing the same IP address as "Bulletin Board A." The MAG site advertised DVDs containing child pornography videos that could be purchased for a fee. A review of "MAG" found that it included several sections containing pornographic images to include a specialty area entitled "dazzler." Within the "dazzler" section of the board, it contained images and hyperlinks to videos of child pornography. A review of the welcome page stated as follows: "here is where you can get on topic content from every were else in the world. This board is viewable by honorary members who have an active 3 months paid subscription to the catfish board."

After reviewing the data provided by CHS, it was determined that a subject also utilizing the screen name of "catfish" was operating the MAG board. The MAG board advertised that payment for access to the board could be made through Western Union money transfer. The payments were required to go to "Brian Musomba Maweu" in Mombasa, Kenya. Another payment option was to send money through the "m-pesa"[3] cash to cellular phone payment system. The MAG board stated that the account information associated with this payment method was "brian musomba," phone number "0711480760," in Mombasa. A third payment option was to send money via paypal using to the email account anthgrand@gmail.com. An internet search of the email address anthgrand@gmail.com revealed that this email address was associated with the Facebook profile "Aloysius Deep Blue" which contained several pictures of an African male playing the guitar.

_____

[3] "M-pesa" is the product name of a mobile-phone based money transfer service available in Kenya and other countries.

-15-

36.    "Bulletin Board A" user "Catfish" posted numerous messages stating that he was the administrator of the website "www.myafricangirls.com."  For example, on June 25, 2009, "Catfish" posted a message asking "Administrator A" for permission to post images from his website, www.myafricangirls.com, on "Bulletin Boart A," as follows:

> Hi ["Administrator A"]
> Just wrondering [sic] if its OK to post links to files in my website
> (www.myafricangirls.com).  Passwords will be included with those posts
> so the content will be effectively free.

In postings on June 24 and 25, 2009, "Catfish" referred to www.myafricangirls.com as "my site."  In postings on July 16 and 17, 2009, "Catfish" stated that he personally produced and sold the child pornography videos on www.myafricangirls.com, which he had been sharing with the members of "Bulletin Board A."  In at least eight separate posts, "Catfish" posted on "Bulletin Board A" links to images on the website www.myafricangirls.com.  "Catfish" also made numerous references to residing in Africa, and even posted on "Bulletin Board A" a link to Kenyan sex offense laws.

37.    Information regarding "catfish" and his operation of the MAG board was forwarded to Kenya law enforcement authorities in September 2010.  Kenyan authorities further investigated the telephone number 0711480760 associated with the "m-pesa" account for "brian musomba."  Kenyan authorities received records from Safaricom, a Kenyan telecom company operating "m-pesa," which revealed that the mobile telephone number 0711480760 and the associated "m-pesa" account were registered to an individual named Brian Maweu.  Kenya authorities subsequently conducted a internet search for Brian Musomba Maweu and determined that he was a member of the Kenya Renewable Energy Association and was working at Sollatek Ltd. in Mombasa, Kenya.

-16-

38.     On December 8, 2010, Kenya authorities went to the offices of Sollatek Ltd. in Mombasa, Kenya and confirmed that Brian Musomba Maweu was employed there as a Customer Relations Manager.   Kenyan authorities met with MAWEU who denied having knowledge of or access to the email address anthgrand@gmail.com or the Facebook profile "Aloysius Deep Blue."   However, he did admit that he was indeed the individual in the pictures on the Facebook profile playing the guitar.   MAWEU further admitted to utilizing the mobile phone number 0711480760.   MAWEU agreed to permit authorities to search his residence in Mombasa.   Officers seized several items including: two printed photography manuals showing various model poses including several sexually explicit images of nude models, a Sony video camcorder, a Kodak digital camera, a camera stand, and several CDs containing child pornography.

39.     On December 8, 2010, Kenyan authorities arrested MAWEU for violation of Kenyan child pornography laws, unrelated to the conduct he is charged with in the United States. The charges in the United States for which this extradition request is being submitted, are based solely on MAWEU's activities on "Bulletin Board A."   Kenyan authorities to date have no knowledge of "Bulletin Board A" or MAWEU's activities on the board.   Thus, the child pornography charges in Kenya are based on conduct wholly separate from the conduct which MAWEU is charged in the United States.   MAWEU's identification information is as follows:

NAME:              Brian Musomba Maweu

DOB:               August 14, 1963

POB:               Nairobi, Kenya

Citizenship:       Kenya

Kenyan ID Card No.: 8452093

40.    The Kenyan authorities with knowledge of this case and the whereabouts of MAWEU are:

(1) Officer Kabenei KIPLIMO, Forensic Image Analyst with the Kenyan Police's Criminal Investigation Department

(2) Superintendent TOWETT, Officer-In-Charge of the Kenyan Police's Prosecutions Unit at the Nairobi Law Court

ANITHA S. IBRAHIM
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
CHILD EXPLOITATION AND OBSCENITY
SECTION

SWORN AND SUBSCRIBED BEFORE
ME THIS _____28_____ DAY OF
JUNE 2011.

UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA

-18-

<u>LIST OF EXHIBITS</u>

A.      Third Superseding Indictment

B.      Arrest Warrant

C.      Relevant Statutes

Exhibit A

RECEIVED
IN LAFAYETTE, LA.

MAR 1 6 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

UNITED STATES OF AMERICA

VERSUS

                          (1)

                          (2)

                          (3)

                          (4)

                          (5)

                          (6)

                          (7)

                          (8)

                          (9)

BRIAN MUSOMBA MAWEU    (11)
a.k.a.  Catfish

                          (12)

* CRIMINAL NO.  10-CR-00319
*
* 18 U.S.C. 2252A(g)
* 18 U.S.C. 2251(d)(1) & (e)
* 18 U.S.C. 2252A(a)(2)(A) &(b)(1)
* 18 U.S.C. 2253(a)(1)(3)
*
* JUDGE HICKS
*
* MAGISTRATE JUDGE HORNSBY
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*

1



(13)     * * *

(15)     * * *

(16)     *

(17)     * *

(18)     *

(19)     *

(20)     *

(21)     *

(22)     *

(24)     *

(25)     * *

(26)     *

(27)     * *

THIRD SUPERCEDING INDICTMENT

THE GRAND JURY CHARGES:

<u>COUNT 1</u>

Engaging in a Child Exploitation Enterprise
18 U.S.C. 2252A(g)

Beginning on or about the 8th day of January, 2008, and continuing until on or about the 31st day of August, 2010, in the Western District of Louisiana and elsewhere, the defendants, ████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████ BRIAN MUSOMBA MAWEU a.k.a. Catfish, ████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████ and others known and unknown to the Grand Jury, did engage in a child exploitation enterprise, as more fully described below:

THE ENTERPRISE

The Defendants were members of an Internet-based members-only bulletin board, entitled ████████████████████ the purpose of which was, among other things, the advertisement and distribution of child pornography.  For purposes of

3

this indictment, the term "child pornography" is as defined in Title 18 United States Code, Section 2256(8)(a).

█████████ was hosted by Certified Hosting Solutions, Inc. (hereafter Certified). Certified is a commercial web hosting company that was paid to host █████████ through a credit card associated with █████████ member, BRIAN MUSOMBA MAWEU, a.k.a. Catfish.

The administrators of █████████ had specific requirements for allowing new members to join the board. Each member was required to post child pornography in order to become a member. Furthermore, in order for █████████ members to remain in good standing and avoid removal from the board, each member had to continue to post images of child pornography or █████████

In order to advertise the child pornography, members would post a description of the child pornography that they were making available for distribution. Some advertisements included sample images of the child pornography. In the advertisement, the members posting the advertisements provided the web site address where the child pornography was located and a password necessary to download the material.

All members of █████████ were encouraged and required to post images and videos of child pornography so that all members would have a massive and private library of child pornography available for viewing or download by members.

**THE RULES OF** █████████

The rules of █████████ were printed in English, Russian, Japanese and Spanish, and were specific regarding the types of images that had to be posted in order to qualify for admission to █████████ Those rules stated, in pertinent part:

4

a.  "If I see posts of girls with great big tits and a big black hairy bush, then you can fucking forget being made a member."

b.  "Keep the girls under 13, in fact, I really need to see 12 or younger to know your [sic] a brother."

c.  And don't avoid nudity in previews. I will NOT accept you, if theres [sic] no nudity.  And my definition of nudity is pussy or anal in the shot.  You just waste your own time if you don't do this.  Because you will not get in, if you don't follow the rules."

The rules of ███████ had the following warnings posted which required members to continue to post child pornography or lose access to the Dreamboard:

a.  "If you haven't UPLOADED in 50 days, & login doesn't [sic] work, re-apply, because you have been DELETED."

b.  "Uploaders remain, TALKERS AND LURKERS who DON'T upload are deleated."

The rules of ████████ allowed members to join different sections of the board. One section of ████████ was titled "Super Hardcore."  The rules controlling what could be posted in that section were as follows:

"Its very young kids, getting fucked, and preteens in distress, and or crying, ect... Getting hit hard on the ass, with a belt and so on . . I can't belive some of you guys can't work it out for yourselves? And "pretend" bondage, "Pretend light whipping" is not super hardcore.  If the girl looks totall comfortable, she's not in distress, it does NOT belong I this section [smiley-face icon]"

Members of the ████████ were segregated into groups.  If one were given membership to the ████████ the administrator would dictate in which group the

5

member would be placed.  Each group of members had access to specific locations on the internet bulletin board where child pornography was advertised.

According to the rules of ███████ groups included "Super VIP.", "Super VIP", VIP, and member.

According to the rules of ██████ "Super VIP." members were producers of child pornography that advertised child pornography that they had produced as well as other child pornography that they offered for distribution.

According to the rules o ██████ those who had attained the second highest level of membership, "Super VIP" members, were considered trusted members of the web site.  As such they were able to see more posted advertisements than other members.

According to the rules of ██████ the final two levels of membership were VIP members and members. Members of these levels have access to a restricted supply of child pornography.  In order to move to a higher group on the Dreamboard and  thereby obtain a broader access to child pornography, members must post more advertisements for child pornography, post advertisements for child pornography the member had produced, or post advertisements for child pornography that no other member possessed.

According to the rules of ██████ members were to use encryption technologies in order to prevent detection.   The rules went on to specify which encryption technologies should be used and which should be avoided.

██████ members did not use their real names, but instead used screen names to conceal their identities.  At all relevant time, each of the named defendants were members of ██████

## VIOLATIONS OF CHILD PORNOGRAHY STATUTES COMMITTED BY THE CHILD EXPLOITATION ENTERPRISE

The child exploitation enterprise and the members therein, in concert with three or more persons, engaged in a series of three or more felony violations of Title 18 United States Code, Section 2251(d)(1), that is, advertising the display and/or distribution of child pornography, constituting three or more separate incidents and involved more than one victim. The advertisements included but are not limited to, the advertisements described more fully below:

1. On or about the 7th day of August, 2008, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *VHS(NQ) Ru boy and girl.avi*, which contained child pornography.

2. On or about the 7th day of August, 2008, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *DeeDesi-FULL.mpg*, which contained child pornography.

3. On or about the 17th day of November, 2008, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *Lolitas Rika 12yo_Kayoko 12yo.mpg*, which contained child pornography.

4. On or about the 7th day of November, 2009, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮, did knowingly publish on the ▮▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *My fairy-Ayako Parks*, which contained child pornography.

7

5.    On or about the 9th day of November, 2009, ███████████ ██████████████████████ did knowingly publish on the ███████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *BDMag5-v01_0.05.avi*, which contained child pornography.

6.    On or about the 10th day of November, 2009, ███████████ ██████████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Elia-s1-RedLagoon.avi*, which contained child pornography.

7.    On or about the 28th day of May, 2009, ██████████████████ ███████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Mystery Girl, Inquiry from SweetAsian*, which contained child pornography.

8.    On or about the 19th day of April, 2010, ███████████████████ ███████ did knowingly publish on the █████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *lera.mpg*, which contained child pornography.

9.    On or about the 9th day of June, 2010, ██████████████████ ███████ did knowingly publish on the ███████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *TJ-CharleneDad.rmvb*, which contained child pornography.

10.    On or about the 4th day of April, 2009, ████████████████████ ██████ did knowingly publish on the █████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Kids Box-Jasmin 02-Fucking.mpg*, which contained child pornography.

8

11.     On or about the 12th day of January, 2010, ████████████████ ████████, did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Amusing Kids – Galia3.avi*, which contained child pornography.

12.     On or about the 20st day of January, 2010, ████████████████ ████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Amusing Kids: 41 Photo Sets*, which contained child pornography.

13.     On or about the 13th day of April, 2009, ████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *(Pthc)!!!!New!!!! Caution 01Full Defloration.avi*, which contained child pornography.

14.     On or about the 18th day of May, 2009, ████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Cum on Baby, SHC Warning: Crying Baby*, which contained child pornography.

15.     On or about the 12th day of June, 2010, ████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Lesinka Collection*, which contained child pornography.

16.     On or about the 27th day of September, 2009, ████████████████ ████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Maria-13yo03 (fucking).mpg*, which contained child pornography.

9



17.     On or about the 28th day of February, 2010, ██████████ ██████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *HindooV830.mpg*, which contained child pornography.

18.     On or about the 1st day of June, 2010, ██████████ ██████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *2009 HC Suck Private Daughter (4yo).avi*, which contained child pornography.

19.     On or about the 24th day of June, 2009, ██████████ ██████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Fantasia Rosy Ruby Ria New Video 01.wmv*, which contained child pornography.

20.     On or about the 9th day of May, 2010, ██████████ ██████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *® 6yo Sharon New Private 2010®.wmv*, which contained child pornography.

21.     On or about the 26th day of May, 2010, ██████████ ██████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Five Days Five Vids.wmv*, which contained child pornography.

22.     On or about the 27th day of June, 2009, ██████████ ██████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Puberty. Sexual*

10

*Excucation for Boys and Girls (1991) Belgium.avi*, which contained child pornography.

23.    On or about the 24th day of February, 2010, ███████████████████ █████████ did knowingly publish on the ███████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Set of pictures labeled BD Young Strawberry*, which contained child pornography.

24.    On or about the 7th day of November, 2010, ███████████████████ █████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Angelica & friend.MIB*, which contained child pornography.

25.    On or about the 1st day of October, 2009, █████████████ █████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *p1 pussy blowjob swallow.mpg*, which contained child pornography.

26.    On or about the 6th day of October, 2009, ██████████████ █████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Gracel Set 40.mpg*, which contained child pornography.

27.    On or about the 6th day of June, 2010, ███████████████ █████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *nizr.mpg*, which contained child pornography.

28.   On or about the 4th day of October, 2009, ██████████████ ███████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Raeana 5yo & Little Bro #0002.wmv*, which contained child pornography.

29.   On or about the 7th day of October, 2009, ██████████████ ███████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *(Private) Cute Melissa-I touche myself-Cixx 2009-Db-HM.mp4*, which contained child pornography.

30.   On or about the 2nd day of November, 2009, ██████████████ ███████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *(Private) Cute Melissa - Bed Stripping-Cixx2009-DB-HM.mp4*, which contained child pornography.

31.   On or about the 25th day of June, 2009, BRIAN MUSOMBA MAWEU a.k.a. Catfish did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Rain.FLV*, which contained child pornography.

32.   On or about the 30th day of July, 2009, BRIAN MUSOMBA MAWEU a.k.a. Catfish did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *chakacha.rar*, which contained child pornography.

33.   On or about the 31th day of December, 2009, BRIAN MUSOMBA MAWEU a.k.a. Catfish did knowingly publish on the ████████ Internet Bulletin

12

Board an advertisement offering to distribute the file entitled *ruffian.avi*, which contained child pornography.

34.    On or about the 14th day of May, 2010, ██████████did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *BD-Mag_01_0D1_2Lelya.avi*, which contained child pornography.

35.    On or about the 25th day of May, 2010, ██████████did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *BD-Mag_04_xx_Marina (aka-LUCY aka TANYA #1).avi*, which contained child pornography.

36.    On or about the 18th day of June, 2010, ██████████did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Bd-mag_07_02_Polina schP_7.07 AKA LudaB.avi*, which contained child pornography.

37.    On or about the 22nd day of March, 2009, ██████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Cherry-Orales.ImorTales.wmv*, which contained child pornography.

38.    On or about the 21st day of July, 2009, ██████████did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *2009 Gracel Series hard blowjob (with cum).mpg,* which contained child pornography.

39.    On or about the 30th day of September, 2009, ██████████ ████████ did knowingly publish on the ████████ Internet Bulletin Board

13

an advertisement offering to distribute the file entitled *taras-fuckh.wmv*, which contained child pornography.

40.   On or about the 17th day of October, 2009, ██████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *2009 3yo VCLP0091(28s).avi*, which contained child pornography.

41.   On or about the 10th day of November, 2009, ██████████████ ██████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *May 2nd , 2008 (not compressed)5.avi*, which contained child pornography.

42.   On or about the 9th day of January, 2010, ██████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *27.01.2004.avi*, which contained child pornography.

43.   On or about the 15th day of December 2009, ██████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Vicky's Story.mpg*, which contained child pornography.

44.   On or about the 18th day of December, 2009, ██████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *cuty baby 002.avi*, which contained child pornography.

45.   On or about the 28th day of December, 2009, ██████████████████ did knowingly publish on the ████████ Internet Bulletin Board an

14

advertisement offering to distribute the file entitled *lollipop4A.avi*, which contained child pornography.

46.     On or about the 7th day of July, 2009, ██████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Pthc Babyshivid Babyj 4Yo Catheter Urethra Russian Doctor.MIB*, which contained child pornography.

47.     On or about the 3rd day of October, 2009, ██████████████████ ██████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *LSM-08-05-01.MIB*, which contained child pornography.

48.     On or about the 4th day of April, 2010 ████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Caution 6Yo Indian Girl (Kleuterkutje).avi*, which contained child pornography.

49.     On or about the 26th day of March, 2010 ████████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Pose Shower Spread Tease (10 you ptsc).avi*, which contained child pornography.

50.     On or about the 28th day of March, 2010 ██████████████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *00004625 2yo assfuck she cries for mommy nasty pthc pedo 1yo 3yo 4yo.mpg*, which contained child pornography.

15

51.  On or about the 19th day of May, 2010, ▮▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *2010 (Specvial Trde)(Judy set unknown)07 cum in mouth).mpg*, which contained child pornography.

52.  On or about the 10th day of March, 2010, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *2010!!! NEW!! Tara 8y suck and fuck june 10th 2008 (uncensored)(RPEX3).avi*, which contained child pornography.

53.  On or about the 6th day of June, 2010, ▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *Keito 11-12 y.o. Japanese boy with man*, which contained child pornography.

54.  On or about the 13th day of June, 2010, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *bad little boy gets caned!.flv*, which contained child pornography.

55.  On or about the 8th day of July, 2009, ▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *Phone.rar*, which contained child pornography.

56.  On or about the 4th day of October, 2009, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin

16

Board an advertisement offering to distribute the file entitled *UP3.rar*, which contained child pornography.

57.     On or about the 15th day of May, 2010, ███████████████ ██████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *"Making Sex Nordic Vanish"*, which contained child pornography.

58.     On or about the 27th day of July, 2009 ███████████ ██████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *14 Inna custom nude sets!!*, which contained child pornography.

59.     On or about the 22nd day of September, 2009, ███████████ ████████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *299 candid nudies 4 to 10 yrs old,* which contained child pornography.

60.     On or about the 7th day of June, 2010, ███████████████ ████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Ulia5.avi*, which contained child pornography.

61.     On or about the 5th day of May, 2010, ████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *gshower.wmv*, which contained child pornography.

62.     On or about the 2nd day of June, 2010, ████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an

17

advertisement offering to distribute the file entitled *Kbaby-Clit, Gina, Asshole.wmv*, which contained child pornography.

63.   On or about the 3rd day of June, 2010, ▮▮▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *Kansas.avi*, which contained child pornography.

64.   On or about the 12th day of April, 2009, ▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *aard_789'.avi*, which contained child pornography.

65.   On or about the 13th day of April, 2009 ▮▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *spongebob getting fucked (16sec).avi,* which contained child pornography.

66.   On or about the 17th day of June, 2010 ▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *Purification Ceremony 1.mpg*, which contained child pornography.

67.   On or about the 17th day of August, 2009, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled *3 yo anal baby KK*, which contained child pornography.

68.   On or about the 10th day of January, 2010 ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮ Internet

18

Bulletin Board an advertisement offering to distribute the file entitled *R@ygold-I like it.mpg,* which contained child pornography.

69.   On or about the 7th day of June, 2010 ██████████████████ ████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Mylola-Jaxy 6.avi,* which contained child pornography.

70.   On or about the 26th day of May, 2010 ████████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Lolita sex party,* which contained child pornography.

71.   On or about the 1st day of June, 2010, ████████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *cherish model,* which contained child pornography.

72.   On or about the 18th day of June, 2010, ████████████████ ████████ did knowingly publish on the ████████ Internet Bulletin Board an advertisement offering to distribute the file entitled *Lolitafix,* which contained child pornography.

73.   On or about the 17th day of May, 2010 ████████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an advertisement offering to distribute the file *entitled !!! New Pthc-11yo Evelyne 2010!!!.mpg,* which contained child pornography.

74.   On or about the 5th day of June, 2010 ████████████████████ did knowingly publish on the ██████████ Internet Bulletin Board an

advertisement offering to distribute the file *entitled (PT) Young Girls & Boy taught How To Suck on Cam 01.avi*, which contained child pornography.

75.     On or about the 20th day of June, 2010 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ did knowingly publish on the ▮▮▮▮▮▮ Internet Bulletin Board an advertisement offering to distribute the file entitled Webcam *2010 Mybaby (3yo daughter) Special Private Trade.wmv*, which contained child pornography.

All in violation of Title 18 United States Code, section 2252A(g) [18 U.S.C. 2252A(g)].

## COUNT 2

### Conspiracy to Advertise the Distribution of Child Pornography
### 18 U.S.C. 2251(d)(1) & (e)

Beginning on or about the 8th day of January, 2008, and continuing until on or about the 31st day of August, 2010, in the Western District of Louisiana and elsewhere, the defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ BRIAN MUSOMBA MAWEU a.k.a. Catfish, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



and others both known and unknown to the Grand Jury, did knowingly and intentionally conspire, confederate, and agree together and with others, both known and unknown to the Grand Jury, to commit the crime of advertising the display and/or distribution of child pornography in violation of Title 18 United States Code, Section 2251(d)(1).

### MANNER AND MEANS OF THE CONSPIRACY

The United States adopts the factual allegations presented in Count 1 of the Indictment as the manner and means of the conspiracy to advertise the distribution of child pornography.

All in violation of Title 18 United States Code, Section 2251(d)(1) &(e).

### COUNT 3

### Conspiracy to Distribute Child Pornography
### 18 U.S.C. 2252A(a)(2)(A) & (b)(1)

Beginning on or about the 8th day of January, 2008, and continuing until on or about the 31st day of August, 2010, in the Western District of Louisiana and elsewhere, the defendants,

BRIAN MUSOMBA MAWEU a.k.a. Catfish,



and others both known and unknown to the Grand Jury, did knowingly and intentionally conspire, confederate, and agree together and with others, both known and unknown to the Grand Jury, to commit the crime of distribution of child pornography in violation of Title 18 United States Code, Section 2252A(a)(2)(A).

**MANNER AND MEANS OF THE CONSPIRACY**

The United States adopts the factual allegations presented in Count 1 of the Indictment as the manner and means of the conspiracy to distribute child pornography.

All in violation of Title 18 United States Code, Section 2252A(a)(2)(A) & (b)(1).

## COUNT 4

**Forfeiture**
**18 U.S.C. 2253(a)(3)**

Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendants,

BRIAN MUSOMBA MAWEU a.k.a. Catfish,



shall forfeit to the United States,

A.   any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, 2252, 2252A, 2252B or 2260, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of law, pursuant to Title 18 United States Code, Section 2253(a)(1);

B.   any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from said violation of law, pursuant to Title 18, United States Code, Section 2252(a)(2); and,

C.   any property, real or personal, used or intended to be used to commit or promote the commission of such violation of law, pursuant to Title 18, United States Code, Section 2253(a)(3).

The property to be forfeited to the United States includes but is not limited to the following:

1.   Sony Memory Stick 2 GB Sandisk Cruzer, seized from the defendant, ███████████████, on November 16, 2010;

2.   Apple MacBook Pro SN# K64LT8A286E2 with cord seized from the defendant, ███████████████, on November 16, 2010;

3.   Xbox seized from the defendant, ███████████████ on November 16, 2010;

23

4. Sony Camera with Media, SN# 583571 seized from the defendant, ███████████████ on November 16, 2010;

5. Thumbdrive found in eyeglass case seized from the defendant, ███████████ ████████ on November 16, 2010;

6. Sony PSP seized from the defendant, ████████████████████ ████ on November 16, 2010;

7. 4 cruzer thumbdrives, 2 8GB, 1 1.0 GB and 1 2.0 GB seized from the defendant, ██████████████████ on November 16, 2010;

8. 16 CD's and 33 floppy disks seized from the defendant, ██████████ ████████████ on November 16, 2010;

9. 1998 Freightliner Tractor, VIN Number 1FUYDZYB1WP784215, seized from the defendant, ██████████████ on November 6, 2010;

10. Generic desktop computer containing a Western Digital WD1001FALS hard drive SN# WMATV384251 seized from the defendant ████████████ ██████████

11. Seagate 500 GB hard drive model number ST350020AS, SN# 9QM472LW, seized from the defendant, ███████████████ on November 17, 2010;

12. Seagate, model 1.5 terabyte Freeagent hard drive, SN# 2GEYZGNO, seized from the defendant, ███████████ on November 17, 2010;

13. Seagate, model 1.5 terabyte Freeagent hard drive, SN# 2GEYZJ04, seized from the defendant, ███████████ on November 17, 2010;

14. Cisco, model USB 3.8  gigabyte Flip F460B, SN# LB0901901324, seized from the defendant, ███████████ on November 17, 2010;

24

15. Cisco, model USB 3.8 gigabyte Flip F460B, SN# LB0907200964, seized from the defendant, ████████████████ on November 17, 2010;

16. Western Digital, model 1 terabyte My Passport external hard drive, SN# WX91A60H6781T, seized from the defendant, ████████████████ on November 17, 2010;

17. Tan computer tower seized from defendant, ████████████████ ████████████ on November 19, 2010, from Eastgate cleaners, 145 N. Main Street, Kaysville, UT;

18. Black computer seized from defendant, ████████████████ on November 19, 2010, from the residence located at 939 Ridge Hill Lane, Apt 20, Midvale, UT.

19. Sony PSP seized from defendant, ████████████████ on November 19, 2010, from the residence located at 939 Ridge Hill Lane, Apt 20, Midvale, UT.

20. Digital media disks seized from defendant, ████████████████ ████████████ on November 19, 2010, from the residence located at 939 Ridge Hill Lane, Apt 20, Midvale, UT.

21. 2 digital cameras seized from defendant, ████████████████ ████████████ on November 19, 2010, from the residence located at 939 Ridge Hill Lane, Apt 20, Midvale, UT.

22. Gateway computer, SN#06634DB0DS24, seized from the defendant, ████████████████, on November 16, 2010;

23. Maxtor computer, SN# Y22R4J7E, seized from the defendant, ████████████████ ████████████ on November 16, 2010;

25



24. Ultra mini-tower computer, SN# 00282657 with included Seagate hard drive, SN# GS861532, seized from the defendant, ██████████████████ on November 16, 2010;

25. E-Machine desk top computer SN# CEX5510021689, seized from the defendant, ████████████████████████ on January 31, 2011;

26. Gateway laptop computer, SN#T4A8131004493, seized from the defendant, ██████████████████████ on January 31, 2011;

27. Toshiba laptop computer, SN# 26267656, seized from the defendant, ██████████████████████ on January 31, 2011;

28. HD Laptop computer, SN# CNF0243K09, seized from the defendant, ██████████████████████ on January 31, 2011;

29. Western Digital hard drive, SN# WCANMF281915, seized from the defendant, ████████████████████████ on January 31, 2011;

30. Western Digital hard drive, SN# WCA1148058905, seized from the defendant, ████████████████████ on January 31, 2011;

31. Western Digital hard drive, SN# WCAPZ0843220, seized from the defendant, ██████████████████ on January 31, 2011;

32. Maxtor hard drive, SN# 2CAS65D8 seized from the defendant, ████████████████████████ on January 31, 2011;

33. Sprint air card ESN# 58489681, seized from the defendant, ████████████████████████ on January 31, 2011;

34. Sprint air card HEX 60A50A22, seized from the defendant, 
 on January 31, 2011;

35. 51 DVD's seized from the defendant, ████████████
████████ on January 31, 2011;

If the above-described property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

A TRUE BILL:

*Vanessa J Tuttle*

FOREPERSON: FEDERAL GRAND JURY

STEPHANIE A FINLEY
United States Attorney

JOHN LUKE WALKER Bar # 18077
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501-6832
Telephone: (337) 262-6618

ATTEST A TRUE COPY
TONY R MOORE, CLERK
USDC, WESTERN DISTRICT OF LA
BY _____
DATE _____

27

Exhibit B

O 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Louisiana

| | | | |
|---|---|---|---|
| United States of America | ) | | |
| v. | ) | | |
| **BRIAN MUSOMBA MAWEU** | ) | Case No. | 10-CR-00319-11 |
| a/k/a Catfish | ) | | JUDGE HICKS |
| Defendant | ) | | MAGISTRATE JUDGE HORNSBY |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     **BRIAN MUSOMBA MAWEU, a/k/a Catfish (WHEREVER FOUND)**                    ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ■ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

**Engaging in a Child Exploitation Enterprise. [18 U.S.C. 2252A(g)]**
**Conspiracy to Advertise the Distribution of Child Pornography. [18 U.S.C. 2251(d)(1) & (e)]**
**Conspiracy to Distribute Child Pornography. [18 U.S.C. 2252A(a)(2)(A) & (b)(1)]**
**Forfeiture. [18 U.S.C. 2253(a)(3)]**

Date: _March 16, 2011_                              _(signature)_
                                                              *Issuing officer's signature*

City and state:   Lafayette, Louisiana              PATRICK J. HANNA, United States Magistrate Judge
                                                              *Printed name and title*

---

### Return

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____                                   _____
                                                              *Arresting officer's signature*

                                                              _____
                                                              *Printed name and title*

<u>Exhibit C</u>

1.   <u>**Title 18, United States Code, Section 2252A(g) – Child Exploitation Enterprise**</u>

(g) Child exploitation enterprises.--

> (1) Whoever engages in a child exploitation enterprise shall be fined under this title and imprisoned for any term of years not less than 20 or for life.

> (2) A person engages in a child exploitation enterprise for the purposes of this section if the person violates section 1591, section 1201 if the victim is a minor, or chapter 109A (involving a minor victim), 110 (except for sections 2257 and 2257A), or 117 (involving a minor victim), as a part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons.

2.   <u>**Title 18, United States Code, Section 2251(d)(1) & (e)**</u>

> (d)(1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering--

>> (A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or
>> (B) participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct:

> shall be punished as provided under subsection (e).

> (e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under

section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. Any organization that violates, or attempts or conspires to violate, this section shall be fined under this title. Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for not less than 30 years or for life.

3.  **Title 18, United States Code, Section 2252A(a)(2)(A) &(b)(1)**

(a) Any person who--

    (2) knowingly receives or distributes--

    (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or

(b)(1) Whoever violates, or attempts or conspires to violate, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction under this chapter, section 1591, chapter 71, chapter 109A, chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children, such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years.

4.  **Title 18, United States Code, Section 3299**

Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section 2257 and 2257A), or 117, or section 1591.

[All of the charged offenses are felony offenses under chapter 109A of the United States Code.]

REPUBLIC OF KENYA
IN THE CHIEF MAGISTRATE'S COURT
AT NAIROBI
MISCELLANEOUS APPLICATION NO. 572 OF 2014

REPUBLIC…………………………………………………..APPLICANT

VERSUS

BRIAN MUSOMBA MAWEU…..…………….…………….…..RESPONDENT

ORDER

(Pursuant to the provision of Section 8 and 9 of the Extradition (Contiguous and Foreign Countries) Act CAP 76 Laws of Kenya)

**UPON HEARING** the application presented before this honourable court pursuant to the Order by the Director of Public Prosecutions dated 28th March 2014 issued to the Chief Magistrate pursuant to the provisions of Article 157(6) (a) as read with Section 7(2) (a) of the sixth Schedule of Constitution of Kenya 2010 and Sections 5(1) and 6 of the Extradition (Contiguous and Foreign Countries) Act Cap 76 of the Laws of Kenya),

**AND UPON HEARING** the respondent herein while on oath and the oral application by Mr. Mule for the Director of Public Prosecutions in the presence of the respondent;

**IT IS HEREBY ORDERED:-**

1. The respondent herein has voluntarily and while on oath sought to waive his right to contest his extradition to the United States of America;

2. The respondent has understood the consequences of such waiver;

3. An Order be and is hereby issued for the voluntary extradition and surrender of the respondent from Kenya to the United States of America to face the charges contained in the application dated 28th March 2014;

1

GOVERNMENT
EXHIBIT
2

4. The respondent be surrendered within Twenty one (21) days from the date hereof.

5. The Respondent shall be temporarily escorted to his house in Mtwapa, Mombasa to enable him collect his personal belongings under the escort of police officers,

6. The respondent shall also be escorted to Industrial Area remand prison to collect his cell phone and any other belongings;

7. The United States of America shall meet the cost of the extradition through its Embassy in Nairobi;

8. Pending extradition, the respondent shall be remanded at Kilimani Police Station.

Given under my hand and the seal of this Honourable Court this....8th....day of September......................2014.

Issued at Nairobi this...8th.........day of..September..............2014.

E. CHERONO (MR)
**SENIOR PRINCIPAL MAGISTRATE.**

2

**United States Department of Justice**

*United States Attorney's Office*
*Western District of Louisiana*

---

| | |
|---|---|
| *United States Courthouse* | *United States Courthouse* |
| *300 Fannin Street, Suite 3201* | *800 Lafayette Street, Suite 2200* |
| *Shreveport, Louisiana 71101* | *Lafayette, Louisiana 70501* |
| *Phone: 318-676-3600* | *Phone: 337-262-6618* |
| *Fax: 318-676-3660* | *Fax: 337-262-6682* |

October 10, 2014

**<u>Via Certified Mail</u>**
John F. Stroud, III
515 Main Street
Texarkana, TX 75501

RE:   United States v. Brian Musomba Maweu, aka Catfish
Criminal Number 10-CR-00319-11

Dear Mr. Stroud:

Pursuant to your request for discovery in the captioned matter, enclosed you will find copies of the following:

1.   Case number 10-CR-00319 - Discovery Index (6 pages).

2.   Case number 10-CR-00319 - DVD #7 with documents on discovery index number stamped (1 DVD).

3.   Case number 11-CR-00062 - Discovery Index (5 pages).

4.   Case number 11-CR-00062 - DVD #2 with documents on discovery index number stamped (1 DVD).

5.   Case number 11-CR-00146 - Discovery Index (3 pages).

4.   Case number 11-CR-00146 - CD #2 with documents on discovery index number stamped (1 CD).

Please acknowledge receipt of the material by signing the copy of this letter and return it to me as soon as possible.



GOVERNMENT
EXHIBIT
3

10/14/14

If, after you review the material, you have any questions, please do not hesitate to contact me at the Lafayette number listed above.

Very truly yours,

STEPHANIE A. FINLEY
United States Attorney

BY: _John L. Walker_

JOHN LUKE WALKER
Assistant United States Attorney

JLW/crg

**I HEREBY CERTIFY THAT I HAVE RECEIVED COPIES OF THE DOCUMENTS LISTED ABOVE.**

_____          _____

**JOHN F. STROUD, III**                              **DATE**



GOVERNMENT
EXHIBIT
4

# US Postal Inspection Service *Case Documentation*

USPIS Child Exploitation Investigations   •   US Department of Justice-CEOS   •   (888) 876-5322

## "My Africa Girls" Forum

The data contained within this document is considered law enforcement sensitive.  The following is a summary of this investigation to date and additional information regarding this investigation will be documented in future reports.

## BACKGROUND:

Beginning in 2008, federal agents from the United States Postal Inspection Service and DHS-ICE conducted a joint investigation into online trafficking in child pornography via internet bulletin boards. During the course of the investigation, several subjects provided information to investigators regarding bulletin boards previously unknown to law enforcement to include a board known as "My Africa Girls" or "MAG".

A review of "MAG" found that it included several sections containing pornographic images to include a specialty area entitled "dazzler".  Within the "dazzler" section of the board, it contained images and hyperlinks to videos of child pornography.  A review of the welcome page stated as follows:

"here is where you can get on topic content from every were else in the world.  This board is viewable by honorary members who have an active 3 months paid subscription to the catfish board."

After reviewing the content and related site hosting documents, it was determined that a subject utilizing the screen name of "catfish" and the electronic mail account of AnthGrand@gmail.com was operating the board.

Based upon the hosting company and payment records, a subject identified as Peter North of Alexandria, VA was associated with the accounts.  Investigation into Peter North found that in August of 2008 an unrelated peer to peer child pornography search warrant was conducted at his residence.  During the execution of the warrant, agents located child pornography videos/images containing African girls and a $500.00 money order payable to a subject in Kenya.  No further action was taken at that time based upon the information.  Since that date, North has been in federal custody and is currently serving his sentence in a federal penitentiary located in North Carolina.

Subsequent to the arrest of North, the board and email accounts in question have remained active. A review of access logs reveal that a subject utilizing an internet protocol (IP) address located in Kenya has been accessing both the board and email account.

## INVESTIGATION:

A review of the board found that subjects were able to "purchase" videos from the subject know as "catfish" and obtain access to the videos via the internet or have a DVD delivered via courier.  In reviewing the methods of payment, the following was provided:

If you opt for western union then send the money to:-
Brian Musomba Maweu
Mombasa
Kenya
Aftewards remember to e-mail us the following:-



GOVERNMENT EXHIBIT 5

1) At least 2 names of sender
2) Country of sender
3) Control code
4) Trick question and answer
5) Amount sent
6) Items you want.

In addition, the following was provided as a method of payment:

we can now accept paypal.
Posting continues and we hope to have finished by mid mext week.
Password for each volume goes for 70 USD. Password for all five volumes in one go is 250USD. You can use western union or
paypal. If you would like paypal please send the money to anthgrand@gmail.com [mailto:anthgrand@gmail.com] and on a separate
e-mail indicate which
password you want.


A third payment method was also used involving Babawatoto Enterprises and their "m-pesa" cash to cellular phone payments.  The following is the information regarding payments to Kenya utilizing that service:

**RECIPIENT IN KENYA**
**RECIPIENT First Name: brian**
**RECIPIENT Last Name: musomba**
**RECIPIENT PHONE NO.: 0711480760**
**Address: box 2373 Address:**
**CITY/TOWN: Mombasa**
**FREE SMS To Recipient: enjoy!**
**Order Items**
**Quantity Name SKU Price Subtotal**
**1 M-Pesa KShs 15,000/- 00077 $226.00 $226.00 SubTotal :**
**$226.00 Shipping and Handling Fee : $5.49 Tax Total : $0.00 Total: $231.49**


Subsequent to the arrest of North, the board/email addresses remained active.  The first post arrest information regarding the domain registration was located and the following was obtained:

2Checkout.com Order Number 3970559292
Merchant Order ID: 5277
Contents of your purchase:
Product ID : 24
Vendor Product ID : 1123
Product Description: One-Time Payment of $15.00 for Initial Domain Name Registration - $305.49 Recurring every 1 Year until Cancelled - *Domain Name Renewal fee is NOT included in the RECURRING amount therefore the renewal will need to be paid
separately each year.
Product Name : Hosting - Yearly Eagle Plan + FIRST Year Domain
Quantity : 1
Handling Fee: 0.00
Bill Interval: Bills Every 1 Year Until Cancelled
Total : 320.49 ( USD )
Billing Information
peter north
IP: 196.201.208.129 IP Location: Unknown ( Kenya )
anthgrand@gmail.com
7049655505
300 Yoakum Parkway, #1515
Alexandria VA 22304
United States ( USA )


It was noted that the registration information showed North being the payee and the IP capture revealed an IP located in Kenya.

In addition to the payment and domain information, information pertaining to Facebook profiles were located in the AnthGrand@gmail.com account.  The following are screen shots of the profiles associated with the account:





Still images from videos located on related Facebook profile:







Videos clips from the associated Facebook page were recorded for future reference.

At this time, it is believed that the operator of the "MAG" internet forum is located within Kenya and associated with a Brian Musomba Maweu and/or the subject depicted in the above images.