United States District Court
Western District of Louisiana **RECEIVED**
Shreveport                                    MAR 11 2022

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA

Brian Musomba Maweu (petitioner)


V.          Case no (clerk to supply).


United States of America (Respondent)



Memorandum of Law.
28 USC 2255 motion to vacate sentence.



1)  CASTRO WARNING NOT GIVEN. FOR 16-CV-01273


Petitioners first 28 USC 2255 was in fact
a letter sent to the court requesting
for assistance of counsel to help put
together a 28 USC 2255. Also attached
to the letter was information to assist
counsel compile the habeas corpus petition.
Magistrate Judge recharacterized it as
a 28 USC 2255 without issuing a castro
warning. (See docket sheet case 5:10-CR-00319

---

① As can be seen in his application for second successive 28 USC 2255
case no 19-30963, he wrongly thought his religion could be raised in
a second successive 28 USC 2255. It was of course barred procedurally.

MbL

[insert] 1

entry item 870 dated 07/08/2016. 16-CV-01373
cannot be considered to have become a 28 usc 2255
motion for purposes of applying to later motions the
laws of second successive motion. See Castro V U.S.A
540 U.S 375 (2003). See also:
Kane V Winn 319 F.Supp 2d 162, 225 (1st Cir 2004),
Thai v United States 391 F.3d 491, 496 (2nd Cir 2004),
In re Wagner 421 F.3d 275, 278 (3rd Cir 2005),
United States v Deleston 116 Fed. Appx 454, 455, 456
(6th Cir 2004), United States V. Russell 994 F.3d
1230, 1241, 1242 (5th + 11th Cir 2021) which states in
a concur by Branch Circuit Judge:
        'As a reminder, Russell' initially sent the
    district court a short letter requesting the
    district court to appoint counsel to represent
    him in requesting a sentence reduction under
    the first step act without warning Russell
    of the consequences of recharacterization,
    recieving any argument from Russell concerning
    the merits of a sentence reduction, or giving
    Russell the opportunity to amend or withdraw
    the motion, the district court construed
    Russells letter as a motion requesting a
    sentence reduction and ordered the government
    to respond::::: I believe the district court
    erred as a matter of law in recharacterizing
    Russells letter without any notification or

[Insert] 2

warning to Russell'.

In re woodley U.S App LEXIS 32177 (6th cir 2020)
the court stated

'The district court, without ~~warning~~ giving
woodley any warning or requiring the
government to respond, construed the letter
as a 2255 motion ... Because the District
court did not comply with castros
requirements before recharacterizing
woodley's letter, the letter does not
count as a 2255 motion for purposes
of applying 2255 second or successive
provision [ citing castro v united states
540 u.s 375 (2003) ],

United States v Guerrero 946 F.3d 983 (7th cir 2020),
United States v Saengling 826 Fed. Appx 577 (8th cir 2020),
Nettles v Grounds 830 F.3d 922, 936 (9th cir 2016),
United States v Wilson 545 Fed. Appx 714, 715, 716
(10th cir 2013) is differentiated from petitioners
case in that petitioners letter was a request
for assistance of counsel to help prepare a 2255
and included attachments to assist such counsel to
prepare it which were therefore in themselves
not a complete statement but subject to additions
or omissions by counsel. Wilson on the other
hand labeled his letter as a 2255 motion,
Castro warning would have prompted RERA inclusion.

VIOLATION OF RULE 11 (c)(1).

2) INEFFECTIVE ASSISTANCE OF COUNSEL RENDERED GUILTY
PLEA UNINTELLIGENT/UNCONSTITUTIONAL.

Petitioner did not properly understand the charges.[2]
They regulated speech, but his conduct was
religious excercise, even though such religious
excercise matched the elements of offenses. Had
he known the statutes regulated speech, he
would have pled not guilty and gone to trial.
Counsel knew, or should have known, petitioner
had a religious mindset (see exhibit 1). His
failure to advise him of religious freedom
Restoration Act defense rendered his advice
to be deficient. As the 9th circuit court of
appeals stated in United States V. Christie
825 F. 3d 1048, 1055 (2015):

'If the government strikes first - for
example, by indicting a person for
engaging in activities that form part
of his religious excercise but are
prohibited by law - the person may
raise RFRA as a shield in the hopes
of beating back the governments charge'.

[2] See also Brady v United States 397 US 742, 748 (1970)
'A plea of guilty is constitutionally valid only to the
extent it is voluntary and intelligent' (paraphrased).

MOL 2

[insert] 1

United States V. Daughenbaugh U.S Dist lexis 148194 (5th cir 2021) stated:

'To demonstrate prejudice after a defendant enters a guilty plea, the defendant must show "that there is a reasonably probability that but for counsel's errors, the defendant would not have plead guilty and would have insisted on going to trial." (Hill v. Lockhart 474 U.S 52 1985).'

United States V. Bluitt U.S Dist lexis 63653 (5th cir. 2021) stated:

'To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsels' performance was deficient and that the deficient performance prejudiced his defense. See Strickland V. Washington, 466 U.S 668...'

Counsels performance was deficient because he did not raise a RFRA claim given he knew, or should have known, petitioner had religious mindset. Petitioners defense was prejudiced because he made unintelligent guilty plea. [3]

③ He would have pled not guilty and gone fo trial.

MOL-2

[insert] 2

Even if petitioner signed a plea agreement
stating he understood the charges, such understanding
would only be that he understood the elements of
the offense matched his conduct. It would not
be an understanding of the penal statute and
that it regulated free speech, as opposed to
religious excercise, therefore rendering such
charges relevant to speech and not his
religious excercise.

The attourney's assistance fell below the wide
range of reasonable professional assistance.
See Strickland v Washington 466 U.S 668, 686
(1984). In addittion had petitioner known the
charges pertained to unprotected speech, as
opposed to religious excercise, he would not have
pled guilty but insisted on going to trial. See
Hill V. Lockhart 474 u.s 52, 59 (1985).
The likelihood of a different result would be
substantial, not just conceivable because he
would be judged under the least restrictive
burden standard of RFRA which would not
justify his conviction. See Harrington V. Richter
562 U.S 86, 112 (2011).

[Insert] 3

United States v Broce 488 U.S 563 (1989) stated

    (1) A defendant must under rule 11(c)(1)
    of the Federal Rules of Criminal Procedure,
    be instructed in open court the nature
    of the charge to which the plea is
    offered, and

    (2) The plea cannot be truly voluntary unless
    the defendant possesses an understanding
    of the law in relation to the facts,

The District Court did not instruct petitioner that the
penal statute regulated speech and that therefore the
charge to which the plea is offered pertained to
speech[7]. This aspect of the charge are part and parcel
of the nature of such charge. Petitioner cannot be
said to have understood the charges without being
aware, or instructed, that they regulated speech.
Therefore, although petitioner understood his
conduct matched elements of offense, he did not
have a full understanding of the law in relation to
the facts. He was instructed on only half of
the truth or nature of the charge. His guilty
plea was therefore involuntary / unintelligent. Had
he been instructed by the district court on the
full nature of charge, he would not have pled
guilty and insisted on going to trial because his
conduct was religious therefore not relevant to
the charge.

[7] In other words, Mawen was not instructed on the 1st Amendment
and how the nature of offense is not covered by it.

[Insert] 4

In 2021 U.S Dist. LEXIS 94428 United States v O'Sullivan (2nd Cir) the court stated:

> "Nor is the nature of the offense involved in 18 U.S.C § 1027 "such that Congress must assuredly have intended that it be treated as a continuing one" Quoting Toussie 397 U.S at 115'

Congressional intent defines nature of offence or is also involved in defining nature of offence. Congressional intent for 18 USC 2251 and 18 USC 2252 was to regulate speech, not religious exercise. Petitioner was kept ignorant of that aspect not only by his counsel, but also the court. O'Sullivan goes on to state:

> "Whereas, the factors set forth in section 3553(a) do not support a reduction in defendants sentence, the serious nature of the offense, defendants history and the need for deterrence and non-redictivism remain unchanged."

So the nature of offense informs the need for conviction and imprisonment. Had Maweu raised a successful RFRA claim at trial its unlikely he would have been convicted and imprisoned or even convicted because the nature of offense relevant to the penal statutes in question did not encompass his conduct. This relationship between conviction, imprisonment and nature of offense is also shown in 2022 U.S App LEXIS 685 United States v. Wilkins (11th cir), 2022

[Insert] 5

U.S App LEXIS 2316 United States v Chisholm (6th Cir), 2022 U.S App LEXIS 606 United States U. Roman (6th Cir), 2021 U.S App LEXIS 25343 Rook v Holbrook (9th Cir), 2021 U.S App LEXIS 37013 United States v Chavez (9th Cir) and 2021 U.S App LEXIS 34895 United States v love (7th cir). This serious error by counsel and the court placed petitioner in a very dangerous position that he should not have had to experience. As the 11th Circuit court of appeals wrote in United States of America v Hung Thien LY 646 F.3d 1307 (2011)

' Even the intelligent and educated layman has small and sometimes no skill in the science of law ... without [trial counsel], though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' Powell v. Alabama 287 U.S 45 (1932) '

3) CONVICTING LAWS REGULATE FREE SPEECH, NOT RELIGIOUS EXCERCISE.

Legislative history of 18 USC 2251 and 18 USC 2252 show they were informed by New York v. Paul IFA Ferber 458 U.S 747. See Act April 30, 2003, P. L 108-21, title V, subtitle A, §501, 117 stat. 676 item (1) stating:"

'Obscenity and child pornography are not entitled to protection under the First Amendment under Miller v. California, 413 U.S. 15 [37 L·Ed 2d 419] (1973)(obscenity), or New York v. Ferber, 458 U.S 747 [73 L·Ed 2d 1113] (1982) (child pornography) and thus may be prohibited.'

However this is a regulation of speech as affirmed by United States v. United States Dist Court for cent. Dist, 858 F·2d 534, 538 (9ª Cir 1988) which states

' we begin by acknowledging that the statute at issue regulates speech, albeit speech that is not protected by the first amendment. See Ferber 458 U.S at 763-64. Because protected and unprotected speech are "often separated only by a dim and uncertain line"'.

Child pornography is as defined in 18 USC 2256 (2)(E).

4) PETITIONERS RELIGIOUSITY MEETS THE MEYERS TEST (SINCERELY)

United States v. Meyers, 95 F.3d 1475 v.S App 10th cir (1996) made the following standards defining religious conduct. (Also see item 8 of this petition (7th truth to Noah's ark in exhibit 2))

a) Ultimate ideas
b) Metaphysical beliefs
c) Moral systems
d) Comprehensiveness
e) Accoutrements of beliefs listed as Founder/Prophet, important writings, gathering places, keepers of knowledge, sacraments, structure, holidays, diet/fasting, appearances and propagation.

Petitioner breaks down his religious beliefs in that order as follows

a) Ultimate ideas. Petitioner believes the prophecy in Isaiah 19:19-20, the commands of our creator in genesis 1:28 and 1:29, and the shameless nudity in genesis 2:25 are the edenic purpose of our existence and sanctify the sacraments of creativity, herbs and erotica respectively. We are to live an edenic lifestyle in

Order to inherit an eternal edenic life upon our death.

b) Metaphysical beliefs. Petitioner believes in a supreme creator and its spirits which made all things, the existence of evil spirits under satan that corrupt all things and in mankinds status as spirits created to exist in the material world in a body of flesh and bone.

c) Moral systems. Petitioner believes the root of good or bad morals are a good or bad mindset respectivley, and that the 10 commandments are the moral laws of eternity (i.e edenic law). More details can be found in item 8 of this petition.

d) Comprehensiveness. Petitioners beliefs are informed by the scriptures in the King James version of the bible. He expanded on them by writing religious literature presented as exhibits 1 and 10 in his failed application for permission to file a second successive 28 USC 2255,

in the United States Court of Appeals
for the 5th circuit, case number
19-30963 filed in November 2019.

e) Accoutrements of beliefs. Meyers listed
10 as follows:

i) Founder/Prophet. Petitioners prophets are
Moses, Isaiah and Jesus (whom he refers
to as Ra). He has since founded his
religion which he calls Kundi Ra
Khufu (aka edenism) in order to
distance himself from the christianity
which his Indictment suggests has
lost the edenic freedoms enshrined
in the bible. A name is important.[4]

ii) Important writings. These are chiefly
the King James bible. The intepretation
is found in the literature he wrote
while at pollock USP with a view
to attacking his conviction (and
imprisonment) and protecting fellow believers.

iii) Gathering places. Petitioner practiced
his beliefs on the internet, in houses,
hotel rooms and night clubs.

[4] See exhibit 3. Kundi la Khufu is a neo-neterian religious sect
in that it uses ancient egyptian ideas to intepret the Bible.

iv) Keepers of knowledge. Petitioners religious literature is the defining knowledge of his beliefs, however believers are priests and priestesses of whatever trade they engage in.

v) Sacraments. There are three, namely creativity as sanctified by genesis 1:28, Herbs as sanctified by genesis 1:29 and erotica/pornography as sanctified by genesis 2:25. Creativity covers such things as trade and entertainment. Herbs cover such things as alcohol and Marijuana. Erotica covers such things as what petitioner was indicted for.

vi) Structure. Priests and Priestesses minister to their congregation according to the way of their trade. So, for example, Petitioner was a priest of erotica when he engaged children in his child pornography videos (Goldberg Pictures) and the adults and children in those videos were also performing the role of sex priestesses. The congregation were the audience that watched the videos i.e members of My African

girls and dreamboard.

VII) Holidays. The sabbath (i.e sunday) is considered sacred primarily because petitioner was raised up in a christian community. He has since added the full moon nights of April, August and December as ufundi (creativity) festival days.

IIX) Diet/fasting. These observations are decided by the will of the individual.

IX) Appearances. Prior to his indictment there were no special attire. However he has since added the ANEH as a symbol of being born again into the fundi la Khufu faith.

X) Propagation. Petitioner believes the best way to grow a religious community is to raise children into the culture and ways of that religion in much the same way as abraham did. Hence his involvement in Child pornography. He has since written down his beliefs with a view to making the world

aware that his conduct, which resulted in his indictment, was religious and also to ensure other believers in Africa are protected from prosecution by the U.S.A. Most African religions have an oral tradition, however since the U.S.A. has demonstrated it will prosecute anybody who in their opinion has broken U.S law, It becomes necessary to create literature to be made available to all africans for free. He is a Priest of music and pornography.

5) PETITIONER WAS SUBSTANTIALLY BURDENED AND IT WAS NOT THE LEAST RESTRICTIVE.

Fazaga v. FBI  965 F.3d 1015, 1061 (9th cir 2020) States in part

"Under RFRA, a 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a government benefit .... or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions...."

Criminal case 10-CR-319-11 is a criminal sanction and the government struck first. The resulting 18 USC 3553 factors are a manifest injustice and substantial burden which are not the least restrictive, detering even religion in his country.

a) Concerning 18 USC 3553(a)(1). The offence pertained to unprotected free speech. Defendants/Petitioners conduct was religious excercise. He had no criminal history no was his conduct a crime.

b) Concerning 18 USC 3553(a)(2)(A). As can be deduced from item 8 in this petition, petitioners conduct may not have had serious literary, political, scientific or aesthetic value but it did have profound religious value. The compelling government interest was to

'... eliminate child pornography and protect children from sexual exploitation'. See legislative history of 18 USC 2251, Act Sept 30, 1996, P.L 104-208, Div A, Title 1, § 101(a) [title 1, § 121 (subsec. 1)], 110 stat, 3009-26

Item 13.

but only in so far as such child pornography is speech as opposed to religion. The penal statutes did not apply to petitioner.

c) Concerning 18 USC 3553(a)(2)(B). Given that some members of Dreamboard and My african girls may have practiced free speech, closing down websites would still allow for petitioners free excercise of religion. Its unconstitutional to deter free excercise of religion.

MOL   11

The United States detered the practice of petitioners
religion even in his own native country of Kenya.

d) Concerning 18 USC 3553 (a)(2)(c). Its worthy to note
that as stated in O centro Espirita Beneficiente
Uniab Do Vegetal V. Ashcroft  342 F.3d 1170, 1184
(10 Cir 2003)

'...The United States has obligations under
its laws and other international treaties
to protect religious freedom....'

Shutting down offending websites because some
members were or may have been excercising
free speech would regulate such unprotected speech
while at the same time allowing for free
excercise of religion for those excercising their
sacraments in a way that keeps out free speech
participents. For example using a server located
in Kenya, accessible only to those who sign up
as members of a faith that regards child pornography
as religious sacrament, or even just doing it offline
in a country that accommodates such religion e.g
Kenya.

e) Concerning 18 USC 3553 (a)(2)(D). Correctional
treatment for petitioner is a deprogramming
excercise. As one court said of using such

tactics. See Colombrito v Kelly 764 F.2d 122, 131 (2nd cir 1985)

" Certainly their conduct is odious and has the effect of depriving the victim of important rights - his liberty, his freedom, amongst other rights" (quoting) Taylor V. Gilmartin, 686 F.2d 1346, 1357 (10th cir 1982). Also see Rideau v. Jefferson County 899 F. Supp 298, 302 (5th cir 1995); Roe V Abortion soc 811 F.2d 931, 934 (5th cir 1987).

Petitioners conviction and imprisonment is a deprogramming excercise by the United States government ~~intendend~~ intended to cause him to abandon his beliefs that engaging in child pornography is a sacrament in favor of certified behavior approved by the U.S government and taught by Psycological services department of the BOP. Its analogous to the way Chineese government deprogramms its muslim population.

6) PETITIONER IS ACTUALLY INNOCENT.
under Schlup v Delo 513 U.S 298, 327, (1995) a petitioner must show
" Its more likely than not that no reasonable juror would have found petitioner guilty * beyond a reasonable doubt in light of the new evidence of innocence"

Under Uptergrove v. Dir Tex. Dept of Crim. Justice –
Corr. Insts. Div, U.S Dist, LEXIS 143352
(5th Cir 2021)

In order for evidence to constitute new
evidence that can support a claim of
actual innocence and allow a petitioner
to overcome the limitations period, it
must have been unknown to counsel and
not discoverable with reasonable investigation.
Hancock v. Davis 906 F.3d 387, 390
(5th Cir 2018).

Hancock v. Davis 906 F.3d 387, 390 (5th Cir 2018)
actually states

' Evidence does not qualify as "new" under
the schlup actual-innocence standard if
" it was always within reach of [Petitioners]
personal knowledge or reasonable investigation."
Moore, 534 F.3d at 465,'

In addition, Floyd v Vannoy, 894 F.3d 143, 156
(5th cir 2018) stated

'... because this information was not presented
at trial, and remained unknown to the
prosecution, defense and trial judge throughout
the trial, it is "new" evidence'.

" To be credible, such a claim requires
petitioner to support his allegations of
constitutional error with new reliable
evidence - wether it be exculpatory scientific
evidence, trust worthy eye witness account
or critical physical evidence - that wer not
presented at trial'. Schlup v. Delo 513
U.S 298, 324  115 S.ct 851  130 L.Ed 2d
808 (1995)

Petitioner attaches exhibit 5 in support of his actual
innocence claim. On page 59-12 there is the
kenyan law on child pornography. Section 16(2)(b)
clearly shows it is recognized as a religious sacrament.
Evidence meets schlup test. Petitioner's prior knowledge
of sexual offences act was that child pornogaphy was not
included in it. 2014 was the year he spent mostly
in custody. He had no legal or counsel representation
therefore no knowledge about the change in such law
to include child pornography. He had no reason to
investigate because religion did not become an issue
until he later learned his charges concerned speech
and not religious exercise, hence his challenge to the
guilty plea. Investigations into 10-cr-319-11 were
completed in 2011 with petitioner's indictment. No reason
for counsel, prosecutor or fact finder to have exhibit 5. Even
in light of all evidence, exhibit 5 supports RFRA
(religious freedom info restoration act) claim of Actual

innocence in that his conduct was legal religious
excercise in his native Kenya where he lived
at the time period of the alleged offenses, (i.e
2008 to 2010). For although child pornography
was not specifically addressed in any Kenyan
law at the time, non the less its inclusion
in the 2014 version of sex offenses act (i-e
exhibit 5) casts reasonable doubt on whether
or not petitioner commited a crime in
Kenya or even the U.S.A for that matter,
(Since extradition treaties require the offense
to be common to both countries, and petitioner
was extradited in 2014). It is clear he
had no knowledge of the revised 2014 act
(exhibit 5) otherwise it would have been grounds
for challenging his extradition since his conduct
was legal in Kenya and therefore does not
qualify for extradition. In addition, exhibit 5
is reliable because it was downloaded from
Kenyalaw.org, while he was incarcerated at
pollock U.S.P, by a staff member. This
court can thus authenticate. It informs a
factfinder to believe since petitioner is
Kenyan, it is reasonable for him to regard
child pornography as a religious sacrament
and that it would be unreasonable to burden
his faith with imprisonment. In light of

all evidence, a fact finder who is reasonable
would have agreed that shutting down the
websites concerned would have achieved the
compelling government interest informing the
penal statutes 18 USC 2251 and 18 USC 2252
which was to:

'... eliminate child pornography and
protect children from sexual exploitation'.
See Act Sept 30, 1996, P.L 104-208,
Div A, title 1, § 101 (a) ∠ title 1, § 121
(Subsec. 1)], 110 stat, 3009-26 (Item 13.),
as contained in the legislative history
of 18 USC 2251 (i.e congressional findings).

The "childpornography" refered to is categorized
as "speech" not "religious excercise" therefore
regulation only applied to those indulging in
it as "speech".

Its also worthy to note that the schlup standard
did not require evidence be newly discovered as
Pierre V. Vannoy U.S Dist LEXIS 187261 (5ᵗʰ cir 2016)
states

'The schlup decision, however, did not
require that the evidence be newly
discovered, only that it be reliable

and not presented at trial (Gladney V.
Pollard, 799 F.3d 889, 898 (7th cir 2015)
(citing schlup, 513 U.S at 324).


Petitioners guilty plea was unintelligent and thus
unconstitutional. He is actually innocent.
In addition, upon the closure of dreamboard
in 2010, petitioner did not seek to continue
sharing his sacraments online. from 2010 to
2014 when he was extradited. The
compelling government interest had already been
achieved. His extradition and subsequent conviction
and imprisonment did not add anything to it
except impose an unjustified and unreasonabley
substantial burden on his faith. It certainly
was not the least restrictive. Innocent people
dont qualify for conviction and imprisonment.
The fact that his conviction and imprisonment
was not the least restrictive burden on his
faith is the reason for his actual innocence.
The new evidence shows he had every right
to practice his faith in Kenya and in
an offline mode or if online then on
a server located in Kenya⑤, whoes members
are also practitioues of his faith and
if there is commerce then it does not involve
the U.S Dollar or any american service.

⑥ Technically, since petitioners child pornography was religion and not speech, he
could use an american sever but restrict access only to members of his faith.

In addition, In Goldstein v. Allain 568 F. Supp 1377 (1983) the United States District Court for the 5th circuit stated:

" The United States Supreme Court in Roth v. United States 354 US 476 (1957) and Miller V California 413 US 15 (1973) [citations shortened] attributed to the term 'prurient interest' a specific judicial meaning - that of a shameful and Morbid interest in Nudity, Sex or excretion".

In addition, for material to be obscene, the same court in Carico Inus., Inc V. Tex Alcoholic Bev. Comm'n 439 F Supp 2d 733 (2006) stated:

" Material may be found obscene if (1) The average person would find the work, taken as a whole, appeals to the prurient interest (2) The work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable statute law; and (3) The work, taken as a whole, lacks serious literary, artistic, political or scientific value".

(With the assistance of technology such as Digital Rights Management,

It is highly unlikely that the 'average person'
of a community which regards child pornography
as a religious sacrament would find such work
appeals to the 'prurient interest'. In such community,
it would not be shameful because they excercise
a G2 mindset sanctified by Genesis 2:25. Nor
would their interest be 'Morbid' since it is informed
by such G2 mindset, sanctified by Genesis 2:25
and therefore regulated by such edenic moral code.
In addittion, since their conduct would be religious,
it would not fall under free speech so items
(1) and (3) of Carico case would not apply.
This exemption would be effected when such
child pornography is hosted on an encrypted
server of which only members of petitioners
religion can access. The least restrictive
burden would allow petitioner to reorganize
and practice his religion via such encrypted
religious members only website. His conviction
and imprisonment denies him such rights
especially in his native Kenya which has laws
providing for such religious freedoms (see
exhibit 5). Even by U.S law, such religious
freedoms are protected. Membership of such
website or community is effected by signing a
membership form such as presented in Exhibit 4,
which is Page 20 and 21 of petitioners religious literature
titled 'Khufu Religion Introduction'. General public is Khufu people.

7) PETITIONER DID NOT CAUSE HIS OWN PROSECUTION

In Betts v. United States 10 F.3d 1278, 1236 (7th Cir 1992) the court ruled that

Betts' conduct before the district court leaves much to be desired, and we certainly do not suggest that courts faced with similar behaviour may not impose appropriate sanctions. But Betts' conduct was not criminal, and although it may have constituted misconduct or neglect, if did not render him responsible for the mistaken decision to prosecute him on the criminal contempt charge. We accordingly reverse judgement of the district court. Because we conclude that Betts carried his burden of demonstrating that he did not bring about or cause his prosecution through misconduct or neglect...'

Petitioner is not responsible for prosecutors inability to make a connection between child pornography and religious excercise. Even if petitioners actions may have constituted misconduct or neglect, they did not render him responsible for the mistaken decision of prosecutor to interpret his religious excercise or statements as free speech and prosecute him on child pornography charges that regulate free speech. Prosecutor knew or should have known petitioner was excercising religion (see exhibit 1).

8) THE BIBLE PERMITS CHILD PORNOGRAPHY (SEE EXHIBIT 2).
(BIBLE VERSES QUOTED AS FROM NEW KING JAMES
VERSION OF HOLY BIBLE. SOME MAY BE PARAPHRASED,
FOR CONVENIENCE OF COURT, THEY ARE PRESENTED BELOW).

Item i) N/A

Item2 2) Genesis 2:15-17 " .... but of the tree of
the knowledge of good and evil you shall
not eat, for in the day that you eat of it
you shall surely die."

Genesis 3 "... Then the Lord God called
adam and said to him 'where are you?'
So he said 'I heared your voice in the
garden and I was afraid because I was
naked; and I hid myself.' And he said 'who
told you that you were naked? Have you eaten
from the tree of which I commanded you that
you should not eat?' Then the man said
'The woman whom you gave to be with me,
she gave me of the tree, and I ate.'

Item 3) Genesis 1:31 " Then God saw everything that
he had made, and indeed it was very good."

Genesis 2:25 " And they were both naked, the
man and his wife, and they were not ashamed".

Item 4) Matthew 18:6 "whoever causes one of these little ones who believe in me to sin, it would be better for him if a millstone were hung around his neck and he were drowned in the depth of the sea".

Item 5) Matthew 12:33 "Either make the tree good and its fruit good, or else make the tree bad and its fruit bad; for a tree is known by its fruit."

Item 6) Luke 15:11-32 "....It was right that we should make merry and be glad, for your brother was dead and is alive again, and was lost and is found."

Item 7) Matthew 24:37-51 "... But as the days of Noah were, so also will the coming of the son of man be..."

Exhibit 2 is a page in petitioner's latest religious literature yet to be published. Its called " Jrm. Hendrix and the writings of the spirits". It is a statement expanding on the moral code⁵ of petitioner's religious beliefs as pertains to child pornography.

⑤ See also the Meyers test, item 4(c) of this petition

9) PETITIONER WAS NOT PART OF CONSPIRACY.

The penal statutes 18 USC 2251 and 18 USC 2252 are considered to be conspiracy laws.
In the case of United States V. Barnett 197 F.3d 138, 146 (5th Cir 1999) the court stated;

> ... In order to convict a defendant of a conspiracy to violate a federal statute, "The government must prove at least the degree of criminal intent necessary for the substantive offence itself." Likewise, in order to sustain its case that the defendant aided and abetted in the violation of a federal statute, the government must prove that the defendant "shared in the criminal intent of the principal."

Criminal intent would be engaging in unprotected speech however petitioner engaged in religious excercise, not speech. In addittion since petitioners conduct was religious excercise, he did not share in the criminal intent of the principal who was engaging in unprotected speech and not religious excercise. Petitioner was not a coconspirator in conduct that informed the penal statute. His conduct was religious excercise as shown in exhibit 1.

MOL 24

10) Relief sought.

a) Vacate and expunge conviction on actual innocence.

b) Make ruling that petitioner did not cause his own prosecution as required under 28 USC 2513.

c) Grant immediate release

d) Grant a stay on deportation pending successful conclusion of 28 USC 1495.

e) Order the U.S Marshals to return petitioners Kenyan National ID card which they confiscated.

f) Arrange with the Kenyan Embassy for petitioner to get a new JUMBO passport.

g) Book a direct flight from New York to Nairobi by Kenya Airways 1st Class for petitioner to go back to his native land of Kenya after successful 28 USC 1495, and provide transport and escort to such airport in New York.

h) Liase with Kenyan Embassy to issue petitioner with the new 'Huduma Namba' Identity card required under Kenyas 'National Integrated Identity Management System'.

Respectfully Submitted.

BRIAN MUSUMBA MAWEU.
14th Feb 2022