RECEIVED

MAY 3 1 2022

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

United States District Court
Western District of Louisiana
Shreveport.


Brian Musomba Maweu
            (Petitioner)
                                    10-cr-00319-11
        V                    Case # 22-cv-00702
United states of America
        (Respondent)


        Supplement to Petitioners Reply
            to the Government.


Comes now petitioner adding to his reply to
the governments response to his 28 usc 2255 motion.
He expands on items 2, 3 & 7 of his motion.


1)  Item 2. Trial counsels job was to 'provide
the accused an understanding of the law in
relation to the facts'. See Mason v Balcom
531 F.2d 717, 724 (5ᵗʰ & 11ᵗʰ Cir 1976). 'Guilty
plea does not relieve counsel from 'investigating
potential defenses'. See Lee v Hooper 499 F.2d
456, 463 (5ᵗʰ Cir 1974). Counsel did not do
his job because petitioner did not understand the
law in relation to the facts. Counsel was
inneffective. Had he been effective, petitioner
would have informed him about his religious beliefs.

Counsel would have investigated the
possibility that petitioners conduct was
religious speech and raised a RFRA
claim[6], and informed petitioner about it.

2) Item 3.    When petitioner refers to
'speech' he means unprotected speech.
His reference to 'religious excercise' also
encompasses 'religious speech' that
Meyers classifies as propagation,
sacraments and writings under the
category of Accoutrements of beliefs.
The Oxford American Dictionary and
Thesaurus (2003 edition) defines the
word 'Sacrament' as

  ' A religious ceremony or act of
  the christian churches regarded
  as an outward and visible sign
  of inward and spiritual grace'.

[6] If counsel had instructed petitioner about the 1st amendment and
its relation to his charges, then the revised sexual offences act (2014)
would have been presented at trial and discovered by counsels investigation.

3

It goes on to include

'a thing of mysterious and sacred

significance; a sacred influence,

symbol etc'.

Bearing in mind that the threshold for

establishing the religious nature of petitioners

beliefs is low (see United States v Meyers

95 F.3d 1475, 1482, 1483 [10ᵗʰ Cir 1996]), the

Goldberg Pictures videos petitioner made

were sacraments in that they showed children

showing outward and visible signs of their

inward and spiritual grace pertaining to

Genesis 2:25[8]. Children are closer to the

edenic mindset than adults.   In addition,

those videos had a logo of a naked

nubian child obtained from a book by

Leni Reifensthal titled 'Nubians of

Kau'. It was also a sacrament in that

the nubians of Kau are a nudist

[8] The least restrictive burden under RFRA would allow for such videos
to be distributed on a server located in Kenya and configured to
reject non african IP addresses.

4

tribe from east africa who clearly
exhibit freedoms associated with Genesis
2:25. Even their mothers display the
genitalia of their young daughters to
the public during their dance festivals.
This evidence is available via a discovery
process of Reifensthals book. That tribe
is governed by a witchdoctor and therefore
their conduct is religious, the european
equivalent would be the Wiccan faith.
The goldberg pictures logo is a symbol of
such religiousity. In the expanded version
of petitioners faith, that logo would
represent the goddess of pornography
aka Hetheru, aka Hathor. It is also
worth noting that, at least in east african
language of swahili, the word 'mila' means
'custom', 'tradition' or 'religious prescription'
(i.e sacrament) as can be seen in exhibit 7

attached which is a copy of pages from the Swahili - English dictionary compiled by Charles W Rechenbach and printed by the Catholic University Press in 1967. The word 'Mila' is on page 320 (the 3rd word in first column). Therefore the conduct of africans in Leni Reifensthals book may also be refered to as african culture[1] because africans generally do not differenciate between religious and cultural activities. Such differentiation is a uniquely western idea. Furthermore african religious conduct tends not to be written down, so petitioner was not in error when he did not present aboundant religious speech prior to his prosecution. His secrecy was informed by Romans 14:13 'Therefore let us not judge one another anymore, but rather resolve this, not to put a stumbling block or a cause to fall in our brothers way' NKJV; and

[1] Petitioner took it to the next level by having such freedoms recorded, and shared on video, as religious sacraments.

Colossians 2:18 'Let no one cheat you of your reward, taking delight in false humility and worship of angels, intruding into those things which he has not seen, vainly puffed up by his fleshly mind...', NKJV. The latter informing his religious literature and legal battles with the united states government.[5] Nonetheless petitioner did present some religious speech such as his Goldberg Pictures videos, the logo thereof, and a 'Noah's ark' religious propagation to Dasha 4 ever justifying his acceptance to host Dreamboard. Such 'speech' aka religious exercise is discoverable, together with evidence in Leni Reifensthals book, under rule 6 of rules governing section 2255 proceedings should this honorable court find it necessary. Note that the Noah'' ark statement is labled exhibit 1 but available only via rule 6 discovery.

[5] ... and the former (romans 14:13) Informed him to be secretive not out of shame or to avoid getting caught, but rather to respect his neibours who would likely be offended by his beliefs.

3) Item 7.

Further to 28 USC 2513 (a)(2), United States v. Graham 608 F.3d 164, 180 (4ᵗʰ Cir 2010) stated that 'the second clause of § 2513 (a)(2) requires the petitioner show that no other subsequent conduct during the course of the governments investigation induced the government to commence a wrongful prosecution. Essentially, the " misconduct or neglect" prong is an enstoppel defense that protects the United States Treasury against defendants who <u>could</u> <u>have thwarted a prosecution that had already begun</u>, but instead went to prison and then attempted to collect money'.[emphasis added]. In order to thwart prosecution that has already begun, one has to be aware of such prosecution. It's reasonable to state that petitioners prosecution began with his 01/11/2011 indictment (see entry 200 in criminal docket for case 10-CR-00319-11) which he learned about in 2014 when he

was rearrested to face extradition hearings and
given a copy of an affidavit in support of
extradition compiled by a certain Anitha S
Ibrahim, designation LEAD ATTORNEY. His
first reaction was to challenge the extradition
because the charges were related to those he
was aquitted of by a Kenyan court in 2012
following his first arrest in 2010. Even his
PSI confirms this.[4] A discovery under rule 6
would be needed to uncover such evidence. He
was represented by counsel in the 2010-2012
trial and made a verbal request to the
court, during extradition hearings, that such
counsel be subpoenad in hopes he can be
a witness to testify that the indictment was
related to the 2010-2012 trial he had won
therefore rendering the extradition to be
wrongful. Unfortunatley the lawyer never
showed up. Petitioner was not given, nor

[4] strangely enough, the indictment claimed his charges were
not related to that 2010-2012 trial. This in itself suggests
deciet on the part of the U·S government, luring petitioner to
the USA.

could he afford counsel. Meanwhile, because he could not raise the 1 million or so shillings bond money, he was detained at the Industrial area remand prison in nairobi. The conditions therein were very bad (bed bugs in the mattress and poor quality/insufficient food were the most noticable). Petitioner was psycologically pressured to find a way out which led him to reverse his decision to challenge extradition. In any case the indictment contained language that convinced him he violated U.S federal laws. None of that language explained the true nature of the charges. Such belief, coupled with ineffective assistance of counsel in the U.S.A informing his unconstitutional guilty plea. Inspite of his best efforts, petitioner could not 'thwart' his prosecution, for he was outmanouvered by a powerful and highly resourceful intergovernmental system②

② such intergovernmental system turned out to be blind to the connection between religion and childpornography. Its leader, the USA classifies child pornography as secular and unprotected speech.

that was determined to have him incarcerated in the worst U.S Federal Penitentiary. Had he access to legal and financial support, as he did in his 2010-2012 trial, he would have fought to remain in Kenya. In addittion he only learned about 28 USC 1495 while at pollock USP. This legal battle with the U.S.A is not premeditated.

Its not clear when the U.S government began investigations, however what is clear is that all of petitioners actions were informed by his religious beliefs[3] as they have continued to be in his religious literature, legal battles with the U.S.A and refusal to enrol for sex offender programming. The only reason he enrolled in Drug education class is to ensure he gets his full pay as an orderly. The only reason he enrolled for challenge program and bible study at

[3] Prior to child pornography being incorporated in the sexual offences act of Kenya 2014 [2012] edition, Pornography was a misdemeanor under section 181 (traffic in obscene publications) of penal code chapter 63. Exemptions were made for religious use, hence technically petitioner was innocent.

Pollock USP was to escape its cell politics and get a feel for the christianity practiced by americans, which he concluded was superficial and hence embarked on the creation of Kundi la Khufu (Edenism) and literature thereof containing his long held beliefs and what he learned about ancient african religion while at Pollock USP.

In addittion, contrary to the governments opinion, petitioner is not a child molestor. The Oxford American Dictionary and Thesaurus (2003 edition) defines the word 'molest' as:

    1) To annoy or pester (a person) in a hostile or injurious way

    2) Attack or interfere with (a person), esp sexually.

The government presents no evidence① that petitioner 'annoyed' or 'pestered' any child in a hostile or injurious way. Nor does the government present any evidence① that petitioner 'attacked' or

intefered with any child in a sexual way. What the government presents is its own misguided perceptions informed by the law categorizing child pornography as dangerous to children. Such law being blind to the profound religious value of child pornography. Its a case of one mans meat is another mans poison. Perception is not fact and therefore cannot be evidence[1] of a crime. The facts are that petitioners actions were neither 'hostile' nor 'injurious' because they were intended to instill a G2 mindset on the children. Nor could petitioner's actions constitute an 'attack' or 'inteference' in any way again because they were being trained into aquiring G2 mindsets. If anything it is the U.S government that did wrong by indicting/prosecuting petitioner for engaging in religious activity that was protected under the 1st amendment of its own constitution. Such

[1] i.e reliable evidence

indictment (prosecution effectively imposing a G3 mindset on the children petitioner was training and thereby denying them their right to persve their edenic heritage in their own native land. The real monster is the U.S government, not petitioner. Its perceptions of sexual molestation are not a valid reason to hold petitioner 'negligent' or to have engaged in 'misconduct' that brought about his own prosecution, because petitioners conduct was religious. If the U.S government really cares about children in america and the rest of the world, then it should allow for them to engage in sexual expression amongst themselves and adults but for religious purposes only, just as the Kenya Government does and petitioner was doing.

Wherefore petitioner humbly asks this court to grant his request.   Respect submitted

19th May 2022

CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached motion to expand record was placed in the prison mail system on 25ᵗ May 2022 and addressed to the United States Government counsel of record provided as:

CRISTINA WALKER # 8497
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, LA 71101 - 3068

Respectfully Submitted

BRIAN MUSOMBA MAWEU
# 17362-035
TUCSON UNITED STATES PENITENTIARY
P.O. BOX 24550,
TUCSON AZ 85734.

Copy work
Docket sheet Mailed

RECEIVED

MAY 3 1 2022

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

To: Court Clerk.   District Court
    western District of Louisiana,
    Shreveport

From:  Brian Musomba Mawen
        # 17362 - 035.

Re :   Docket Sheet.


Please send to me the
latest Docket containing
all the attached motions
for criminal case 10-CR-00319-11.


Thanks.

                . 26th May 2022.