
**Child obscenity and pornography prevention; findings.**  Act April 30, 2003, P. L. 108-21, Title V, Subtitle A, § 501, 117 Stat. 676, provides:

"Congress finds the following:

"(1) Obscenity and child pornography are not entitled to protection under the First Amendment under Miller v. California, 413 U.S. 15 [37 L. Ed. 2d 419] (1973) (obscenity), or New York v. Ferber, 458 U.S. 747 [73 L. Ed. 2d 1113] (1982) (child pornography) and thus may be prohibited.

"(2) The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers. 'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance,' New York v. Ferber, 458 U.S. 747, 757 [73 L. Ed. 2d 1113, 1123] (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain. Osborne v. Ohio, 495 U.S. 103, 110 [109 L. Ed. 2d 98, 110] (1990).

"(3) The Government thus has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. 'The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.' Ferber, 458 U.S. at 760 [73 L. Ed. 2d at 1124].

"(4) In 1982, when the Supreme Court decided Ferber, the technology did not exist to—

"(A) computer generate depictions of children that are indistinguishable from depictions of real children;

"(B) use parts of images of real children to create a composite image that is unidentifiable as a particular child and in a way that prevents even an expert from concluding that parts of images of real children were used; or

"(C) disguise pictures of real children being abused by making the image look computer-generated.

"(5) Evidence submitted to the Congress, including from the National Center for Missing and Exploited Children, demonstrates that technology already exists to disguise depictions of real children to make them unidentifiable and to make depictions of real children appear computer-generated. The technology will soon exist, if it does not already, to computer generate realistic images of children.

"(6) The vast majority of child pornography prosecutions today involve images contained on computer hard drives, computer disks, and/or related media.

"(7) There is no substantial evidence that any of the child pornography images being trafficked today were made other than by the abuse of real children. Nevertheless, technological advances since Ferber have led many criminal defendants to suggest that the images of child pornography they possess are not those of real children, insisting that the government prove beyond a reasonable doubt that the images are not computer-generated. Such challenges increased significantly after the decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 [152 L. Ed. 2d 403] (2002).

"(8) Child pornography circulating on the Internet has, by definition, been digitally uploaded or

USCS                                                                         1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17362035

scanned into computers and has been transferred over the Internet, often in different file formats, from trafficker to trafficker. An image seized from a collector of child pornography is rarely a first-generation product, and the retransmission of images can alter the image so as to make it difficult for even an expert conclusively to opine that a particular image depicts a real child. If the original image has been scanned from a paper version into a digital format, this task can be even harder since proper forensic assessment may depend on the quality of the image scanned and the tools used to scan it.

"(9) The impact of the Free Speech Coalition decision on the Government's ability to prosecute child pornography offenders is already evident. The Ninth Circuit has seen a significant adverse effect on prosecutions since the 1999 Ninth Circuit Court of Appeals decision in Free Speech Coalition. After that decision, prosecutions generally have been brought in the Ninth Circuit only in the most clear-cut cases in which the government can specifically identify the child in the depiction or otherwise identify the origin of the image. This is a fraction of meritorious child pornography cases. The National Center for Missing and Exploited Children testified that, in light of the Supreme Court's affirmation of the Ninth Circuit decision, prosecutors in various parts of the country have expressed concern about the continued viability of previously indicted cases as well as declined potentially meritorious prosecutions.

"(10) Since the Supreme Court's decision in Free Speech Coalition, defendants in child pornography cases have almost universally raised the contention that the images in question could be virtual, thereby requiring the government, in nearly every child pornography prosecution, to find proof that the child is real. Some of these defense efforts have already been successful. In addition, the number of prosecutions being brought has been significantly and adversely affected as the resources required to be dedicated to each child pornography case now are significantly higher than ever before.

"(11) Leading experts agree that, to the extent that the technology exists to computer generate realistic images of child pornography, the cost in terms of time, money, and expertise is—and for the foreseeable future will remain—prohibitively expensive. As a result, for the foreseeable future, it will be more cost-effective to produce child pornography using real children. It will not, however, be difficult or expensive to use readily available technology to disguise those depictions of real children to make them unidentifiable or to make them appear computer-generated.

"(12) Child pornography results from the abuse of real children by sex offenders; the production of child pornography is a byproduct of, and not the primary reason for, the sexual abuse of children. There is no evidence that the future development of easy and inexpensive means of computer generating realistic images of children would stop or even reduce the sexual abuse of real children or the practice of visually recording that abuse.

"(13) In the absence of congressional action, the difficulties in enforcing the child pornography laws will continue to grow increasingly worse. The mere prospect that the technology exists to create composite or computer-generated depictions that are indistinguishable from depictions of real children will allow defendants who possess images of real children to escape prosecution; for it threatens to create a reasonable doubt in every case of computer images even when a real child was abused. This threatens to render child pornography laws that protect real children unenforceable. Moreover, imposing an additional requirement that the Government prove beyond a reasonable doubt that the defendant knew that the image was in fact a real child—as some courts have done—threatens to result in the de facto legalization of the possession, receipt, and distribution of child pornography for all except the original producers of the material.

"(14) To avoid this grave threat to the Government's unquestioned compelling interest in

USCS 2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17362035

effective enforcement of the child pornography laws that protect real children, a statute must be adopted that prohibits a narrowly-defined subcategory of images.

"(15) The Supreme Court's 1982 Ferber v. New York decision holding that child pornography was not protected drove child pornography off the shelves of adult bookstores. Congressional action is necessary now to ensure that open and notorious trafficking in such materials does not reappear, and even increase, on the Internet.".

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17362035